S. SPIEGAL & SON, APPELLEE, v. A. B. ALPIRN, APPELLANT.

FILED NOVEMBER 26, 1921. No. 20770.

1. **Evidence:** WRITTEN CONTRACTS: PAROL EVIDENCE. Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of the payment of a money consideration, and is of a contractual nature, parol

or extrinsic evidence is not admissible to vary or contradict the consideration expressed.

2. ——: ——: ——. The rule that parol evidence is admissible to prove that contemporaneously with, or preliminary to, the execution of a written contract the parties entered into a distinct oral agreement on some collateral matter or as a condition on which the performance of the written contract is to depend, does not apply where the written contract is complete in itself and unambiguous, and where it expresses a contractual consideration. *Wehnes v. Roberts*, 92 Neb. 696; *Huffman v. Ellis*, 64 Neb. 623; *Norman v. Waite*, 30 Neb. 302; *Barnett v. Pratt*, 37 Neb. 349, and *De Laval Separator Co. v. Jelinek*, 77 Neb. 192, examined and distinguished.

3. Sales: Default: Remedy. Where a contract of sale provides for deliveries in instalments and for the payment of the price of each instalment as delivered or within a stated time thereafter, the buyer cannot refuse to pay the price of an instalment when delivered, on the ground of a claim for damages for an alleged breach by the seller of another contract, and still insist upon further deliveries under the contract. In such case the buyer's default is a breach of the contract, entitling the seller to rescind and, if the market price has declined, to recover as damages the difference between the contract price and the market price of the instalments remaining undelivered.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed.*

*Henry Monsky*, for appellant.

*Smith, Schall & Howell*, contra.

DORSEY, C.

The plaintiff, S. Spiegal & Son, on June 29, 1917, sold the defendant, A. B. Alpirn, a quantity of scrap iron under a written contract of purchase and sale executed by both parties. This action was brought by the plaintiff to recover the purchase price of a portion of the iron which was delivered to the defendant under this contract, and to recover damages based upon the alleged refusal of the defendant to accept and pay for the remainder of the iron included in said contract.

The plaintiff's petition was upon two causes of action.

On the first, which was for the purchase price of the iron actually delivered, it is conceded that the plaintiff is entitled to $5,159.30. The defendant, however, interposed a counterclaim to the first cause of action, in which he set up a previous contract, executed November 11, 1916, in which the plaintiff had agreed to sell and deliver to the defendant 150 tons of scrap iron at $15 a ton, but which the defendant claims was not fulfilled. The defendant prayed for $3,200 as damages upon his alleged set-off, and asked that it be credited upon the $5,159.30 due the plaintiff on the first cause of action.

The plaintiff's second cause of action was based upon the fact that the defendant was not willing to take and pay for the remainder of the iron which he had contracted to buy under the contract of June 29, 1917, unless the plaintiff would allow him the $3,200 credit upon the iron already delivered; that his refusal to pay the $5,-159.30 in full, without deduction, for the iron already delivered was a breach of the contract; that the market for iron had declined, and that the plaintiff was entitled to recover the difference between the contract price and the market price of the iron that remained undelivered under the contract of June 29, 1917.

The jury found specially that the plaintiff was entitled to recover $350 on the second cause of action, and that the defendant was not entitled to recover upon his counterclaim to the first cause of action. A general verdict was returned in favor of the plaintiff for $5,-540.30, from which verdict and the judgment entered thereon the defendant appeals.

The controversy in this case is with regard to the validity of the defendant's counterclaim to the plaintiff's first cause of action, and as to the plaintiff's right to recover upon the second cause of action. Considering first the issue arising upon the counterclaim, the plaintiff's reply admits that the plaintiff did not deliver to the defendant a part of the iron referred to in the contract of November 11, 1916. As a defense to the defendant's

claim for damages by reason of the plaintiff's failure to deliver under that contract, which is the gist of the counterclaim, the plaintiff alleged that when the contract of June 29, 1917, was made, "it was agreed between the parties that in consideration of the sale of the iron contained in the contract in suit for $28 a ton that any and all differences, disputes and claims of the parties hereto, one against the other, arising out of the transaction concerning the contract of November 11, 1916, should be settled, and that said contract should thereby be annulled and abandoned."

Upon the issue as to whether there had been a release of the defendant's cause of action set up in his counterclaim, the court, over the defendant's objections, admitted testimony to the effect that, in the course of the conversations between the parties which preceded the execution of the contract of June 29, 1917, the defendant offered $22 a ton for the plaintiff's iron, while the plaintiff asked $35 a ton; that the defendant advanced his claim for reimbursement of his loss under the November contract and urged that he was entitled to a lower price on that account; that the plaintiff denied liability for such loss, but that finally a mutual concession was made, and the price of the iron under the June contract was fixed at $28 a ton, partly in consideration of the settlement and release of defendant's claim for damages under the November contract.

The defendant objected to the introduction of this testimony on the ground that parol evidence is inadmissible to contradict or vary the terms of a written instrument; that the contract of June 29, 1917, is complete in itself and unambiguous; that it sets out the mutual promises of the parties—those of the one as consideration for those of the other—without including any reference to the release of claims under the November, 1916, contract, and that the admission of the parol evidence complained of, in effect, reads into the contract a provision that varies and alters its express provisions.

The contract of June 29, 1917, which was signed by both parties, recited that the plaintiff sold and agreed to deliver to the defendant, according to the conditions of the contract, "the various quantities and grades of scrap iron, hereinafter more specifically described, to-wit, from 150 to 200 tons of mixed wrought iron" (describing it in detail); that "the agreed purchase price of the said property is $28 per ton f. o. b. cars Missouri Pacific tracks, Omaha;" that plaintiff should have the option to deliver any amount of the various items of the different grades of iron up to the maximum, but not less than the minimum; that delivery should commence not earlier than July 1, 1917, but that all iron should be delivered prior to September 1, 1917. It further provided that defendant would accept the iron according to the terms of the contract and pay the purchase price as follows: $1,000 on the date of the contract, the receipt of which was acknowledged, which was to be held as a deposit to insure faithful performance; that, as each car was loaded and weighed, the defendant was to pay for it at once, the $1,000 deposit being held by plaintiff to apply on the last car.

The plaintiff's plea of release of the defendant's claim for damages under the November contract and the testimony in support thereof introduce a new element into the transaction represented by the contract of June 29, 1917. That contract, standing alone, evidences a sale of a specified quantity of iron for which the plaintiff is to receive, and the defendant is to pay $28 a ton. With the new element injected into it by the plaintiff's plea, it becomes a contract for the sale of a specified quantity of iron for $28 a ton plus the release of a prior claim of the defendant against the plaintiff, an additional consideration not mentioned in the writing.

Counsel for the defendant points to the distinction between the contract of June 29, 1917, in which the consideration, or promise of the defendant to pay $28 a ton for the iron in instalments as delivered, is of a con-

tractual nature, and an instrument, like a deed, in which the recital of the consideration is a mere acknowledgment of the receipt of a money consideration. The general rule is that where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of a money consideration, and is of a contractual nature, parol or extrinsic evidence is not admissible to vary or contradict the consideration expressed. 17 Cyc. 661, 662; 4 Wigmore, Evidence, sec. 2433; 10 R. C. L. 1042-1044, secs. 236-238. In appellant's brief several cases are cited in which the foregoing rule has been applied, and parol evidence excluded, under circumstances somewhat analogous to those in the instant case. *Baum v. Lynn*, 72 Miss. 932; *Sandage v. Studebaker Bros. Mfg. Co.*, 142 Ind. 148; *Parker v. Morrill*, 98 N. Car. 232; *Hei v. Heller*, 53 Wis. 415; *Arnold v. Arnold*, 137 Cal. 291; *Wessell v. Havens*, 91 Neb. 426.

Counsel for plaintiff argue that the rule just stated has no application to the instant case; that the contract of June 29, 1917, is not sought to be varied, but that the parol evidence relative to the alleged release of the defendant's rights under the November contract was offered as a defense to the defendant's counterclaim; and its admissibility must be tested only by the November contract and the rights existing thereunder. It is difficult to perceive upon what theory that proposition can be maintained. The plaintiff's first cause of action is for the purchase price of iron delivered to the defendant under the contract of June 29, 1917. The defendant counterclaims by setting up a claim for damages for the plaintiff's breach of the November, 1916, contract in failing to deliver iron thereunder. The plaintiff meets the counterclaim by pleading in the reply that at the meeting of the parties when the June, 1917, contract was entered into "it was agreed between the parties that in consideration of the sale of the iron contained in the contract in suit for $28 per ton" the claim of the parties arising out of

the November, 1916, contract should be settled and released.

The defense raised by the reply is, in other words, that, although the parties entered into a written contract on June 29, 1917, which is presumed to have embodied their complete agreement and the result of all their prior negotiations relative to the subject-matter, and although the contract, upon its face, appears to contain and express all that is necessary to constitute a contract for the purchase and sale of a stipulated quantity of iron at a stipulated price, yet there was, in reality, another consideration for the iron in addition to the stipulated price, namely, the release of the defendant's claim under the November contract. It is impossible to escape the conclusion that the parol evidence relating to the alleged release has a direct connection with and bearing upon the contract of June, 1917, and that unless it comes within one of the exceptions to the general rule above stated it would operate to vary the terms of the written contract and its admission would be error.

The plaintiff relies upon *Wehnes v. Roberts*, 92 Neb. 696, in which the following rule is stated in the syllabus: "Evidence tending to establish a separate oral agreement between the parties to a written contract, as to matters upon which such contract is silent, if it does not tend to vary or contradict the terms of the written document, is admissible." In that case Roberts sold Wehnes a threshing outfit, and the action was brought by Wehnes for damages resulting from the failure of Roberts to furnish certain repairs for the machine, and for breach of warranty that the machine would work. The agreement to furnish the repairs and the warranty were oral. At the trial the defendant Roberts objected to parol evidence of the agreement to furnish repairs and of the warranty on the ground that the threshing outfit had been sold to Wehnes under a written contract of sale, and that the parol agreement and warranty would vary it. The facts recited in the opinion of the case are somewhat indefinite.

The written contract of sale was not in evidence, and its contents were shown only by the testimony of the recollection of the parties. It is not clear from the opinion whether the written contract was complete in itself, or whether it expressed a contractual consideration. For that reason the facts upon which the decision rested are too vague to provide a sure foundation for the application of the rule stated in the syllabus or for the construction of the written contract therein. In order, therefore, to determine how far this court intended to go in that case in laying down a rule for the admission of parol evidence, it will be instructive to examine the prior decisions of this court which are cited and relied upon in *Wehnes v. Roberts, supra,* and which form the basis of the opinion therein.

Chief among these is *Huffman v. Ellis,* 64 Neb. 623, from which the language of the syllabus is copied and adopted. In that case the plaintiff, a real estate broker, sued upon a written memorandum appointing him agent to sell the land for an agreed commission. It was silent as to the time within which the sale should be made by the broker, and the court permitted oral evidence showing the agreement of the parties as to when the authority of the broker was to terminate. It was held that such evidence did not vary or contradict the terms of the memorandum.

*Norman v. Waite,* 30 Neb. 302, also commented upon in *Wehnes v. Roberts, supra,* was a suit for the foreclosure of a mortgage securing notes given for the purchase price of an interest in the plaintiff's law and real estate business. The defendant Waite purchased an equal partnership in the business of Rittenhouse, an established lawyer, and his mother gave a mortgage on her land to secure her son's notes. The court admitted parol evidence showing a failure of consideration for the notes and mortgage; that Rittenhouse had agreed to continue in the partnership and business, but abandoned the same, removed from the city and entered into business in

another place, after transferring the notes and mortgage.

It was upon these facts that Cobb, C. J., in the opinion, adopted the language of *Michels v. Olmstead,* 14 Fed. 219: The parol evidence rule "does not prevent parties to a written agreement from proving that, either contemporaneously or as a preliminary measure, they had entered into a distinct oral agreement on some collateral matter, or an oral agreement which constitutes a condition on which the performance of the written agreement is to depend."

In *Norman v. Waite,* however, the only consideration upon which the notes and mortgage were given was the promise of Rittenhouse to remain in the partnership, and his withdrawal brought about an entire failure of consideration. There was no written agreement as to consideration except presumably the usual words, "For value received," in the notes and the expressed consideration of $1,500 in the mortgage. The rule is well settled that, in the case of instruments acknowledging the receipt of a consideration, and where the consideration expressed is not contractual, it is competent to show by parol that no consideration was in fact paid. 10 R. C. L. 1042, sec. 236.

In *Barnett v. Pratt,* 37 Neb. 349, also cited in the opinion in *Wehnes v. Roberts, supra,* there was a sale of a livery stable by A. to B., and A. gave B. a receipt for the money and other consideration representing the purchase price. This paper acknowledged the receipt of $350 in cash from B. and recited that B. agreed to pay a certain note and mortgage on file, "in all making $1,950 for the following property" (describing the property included in the sale). The receipt was signed only by A. It appears that A. was at the time of the sale indebted to C. for wages, and C. brought the suit against B., alleging that B. had made an oral agreement with A. to pay C.'s claim as part of the consideration for the purchase of the livery stable. This court held that parol evidence was admissible to prove this agreement, and that, as it

had been made for the benefit of C., the latter might maintain an action directly against B. Irvine, C., in the opinion says: "We cannot regard the instrument referred to in the petition as a contract complete in itself. It purports only to be a receipt. It is signed only by W. J. Pratt, and not by the party assuming these obligations, and its whole effect is that of an informal memorandum, and' not the expression of a complete contract."

Reference is also made in the opinion in *Wehnes v. Roberts, supra,* to *De Laval Separator Co. v. Jelinek,* 77 Neb. 192. In that case Jelinek was the selling agent of the plaintiff company for separators within a specified territory. The plaintiff sued for the price of a certain number of separators furnished to Jelinek for which he had not paid. He counterclaimed by setting up an agreement by which the company had given him the exclusive right to sell its separators within the territory, alleging that the company had violated this agreement by refusing to furnish him with separators and by furnishing them exclusively to another party, and claiming damages for breach of the contract. Jelinek offered parol evidence to prove the agreement, and the plaintiff company objected on the ground that the contract between the parties was in writing; and the parol evidence offered would vary it.

The writing referred to was in the form of a letter from the company to Jelinek, acknowledging receipt of the order for separators, and saying: "We also have advice from Mr. Graham (an agent of the plaintiff) of his verbal arrangement with you for the sale of our baby machines in that section. * * * We take pleasure in confirming Mr. Graham's arrangement." In the opinion Ames, C., refers to the fact that the letter does not purport to express the agreement of the parties, and is, in effect, a confirmation of a previous oral agreement, the nature of which the letter does not disclose. Alluding to the failure of the letter even to purport to express the agreement, he says: "If it does so purport, it is doubtless as conclusive in that respect as it is with regard to any

other matter concerning which it speaks; but if it does not so purport, then the question whether it does contain the entire agreement, and, if not, what are the omitted terms of the contract, are questions of fact to be determined in like manner as any other fact that is or might be put in issue by the pleadings."

The foregoing analysis of the Nebraska cases cited and relied upon in the opinion in *Wehnes v. Roberts, supra,* is for the purpose of showing that this court has not, in any of those cases, denied or taken exception to the principle that where a written contract, signed by both parties, is complete in itself, and contains and expresses the mutual covenants and promises of both, without ambiguity or apparent omission; where the statement of the consideration therein is of a contractual nature, and not a mere acknowledgment of receipt, parol evidence is not admissible to contradict, vary or add to the consideration expressed in the instrument itself. The rule announced in the syllabus in *Wehnes v. Roberts, supra,* does not support the position of the plaintiff in the instant case, when interpreted in the light of the prior decisions of this court.

In *Wessell v. Havens,* 91 Neb. 426, there was a written contract of sale of a general store and the good-will of the business. The contract contained a stipulation as to the invoice of the stock to arrive at the amount of the purchase price and an agreement on the part of the purchasers to pay the same on completion of the inventory; an agreement by the purchasers to lease the place of business at a stipulated rental, and a provision that the good-will of the business was included. The consideration was paid and the purchasers took possession under a bill of sale of the stock and lease of the premises. They conducted the business for more than a year, then sold out and retired. After their retirement they sued the man who had originally sold them the stock on the ground that, at the time of the sale, he had orally agreed not to re-engage in the same business at the same place,

but that he had conducted a similar business at that place in violation of said agreement. Judge Rose, in the opinion, says: "On a record presenting the situation outlined, two well-established rules of law defeat the plaintiffs' case: (1) In a duly-executed, formal, written contract containing the terms under which a stock of general merchandise is sold, a provision that the good-will of the seller's mercantile business is included in the sale does not imply an agreement that the seller shall not re-engage in such business. (2) Where the good-will of a mercantile business is included in a duly-executed, formal, written contract of sale, without any restriction on the right of the seller to re-engage in the same business, oral evidence that he agreed not to do so is inadmissible as varying the terms of the written instrument."

The rule against parol evidence applied in that case is equally pertinent in the instant case. The principle that underlies it is that when a writing, upon its face, imports to be a complete expression of the whole agreement, and contains therein all that is necessary to constitute a contract, it is presumed that the parties have introduced into it every material item and term, and parol evidence is not admissible to add another term to the agreement, although the writing contains nothing on the particular item to which the parol evidence is directed. 10 R. C. L. 1030, sec. 222.

Counsel for plaintiff lay stress upon the language quoted in the opinion in *Wehnes v. Roberts, supra,* from *Norman v. Waite,* 30 Neb. 302, to the effect that the existence of a written contract "does not prevent parties to a written agreement from proving that, either contemporaneously or as a preliminary measure, they had entered into a distinct oral agreement on some collateral matter, or an oral agreement which constitutes a condition on which the performance of the written agreement is to depend." It has been shown that the admission of parol evidence in *Norman v. Waite, supra,* came within the well-established rule that such evidence is receivable to

show a failure of consideration, the consideration expressed in the notes and mortgage being a mere recital of the receipt of money. The "distinct oral agreement" was the promise of Rittenhouse to continue as a partner in the business, and the parol evidence simply showed what the consideration was and that it had failed. But the fact that the language was employed in a case where the facts unquestionably justified the admission of parol evidence will not warrant an extension of that language to cover a case in which the consideration expressed in the written contract is of a contractual nature, is clear, definite and unambiguous, and where the effect would be to add another term to the express agreement of the parties.

The test which most of the courts have applied to determine whether parol evidence is admissible to prove a collateral agreement is whether or not the writing appears upon inspection to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties, and whether or not the parol evidence is consistent with, and not contradictory of, the written instrument. See note appended to the report of *Wehnes v. Roberts, supra,* Ann Cas. 1914A, 452.

Counsel for plaintiff have cited several cases from other states, notably *Downey v. Hatter,* 48 S. W. (Tex. Civ. App.) 32, in which some of the courts seem not to have applied the test referred to, and in which the conclusion reached is that a collateral agreement may be shown by parol even though it adds another term to the consideration expressed in the written contract, on the theory that it operated as an inducement to the making of the written contract. Obviously, the unlimited application of the rule contended for by plaintiff would put an end to the parol evidence rule and to the sanctity of written contract.

Parties negotiate and presumably discuss and agree upon everything to be done by either party pertaining to the subject of the negotiations. They put the result of

their negotiations in writing and the writing covers and includes everything necessary to make a binding contract. Its covenants are mutual and it sets out in detail the precise contractual obligations which each party assumes in consideration of the obligations assumed by the other. One agrees to sell and deliver, the other agrees to purchase and pay a certain definite price for the thing sold. Afterwards the seller asserts that he was induced to sign the contract not on account of the consideration moving to him by the terms of the writing itself, but by an agreement made by the buyer that, in addition to the payment of the stipulated price, he would release an existing obligation of the seller under another contract, and that the promise to release formed the condition upon which he entered into the contract in question. If permitted to show such an alleged preliminary agreement in this case, in which there is no question of the completeness and definiteness of the contract on its face, no case could be imagined in which it would not be possible for one party or the other by parol evidence to insert new conditions into the contract, or for one party to impose added burdens upon the other.

The rule contended for by the plaintiff has been applied by some courts to the facts in certain cases for reasons that are impossible to reconcile with the parol evidence rule. It would be impracticable to attempt to examine and distinguish all, or any considerable number, of these cases. Suffice it to say that we think a reasonable construction of that rule, in consonance with the prior decisions of this court, requires us to hold that the admission of the parol evidence complained of was erroneous.

Turning now to the question arising upon the plaintiff's second cause of action, it will be recalled that after a certain quantity of iron, amounting to $5,159.30, had been delivered by the plaintiff under the June, 1917, contract, the defendant refused to pay therefor unless the plaintiff would allow him a credit thereon of $3,200 for damages alleged to have accrued to the defendant for

breach of the November, 1916, contract. The plaintiff claims that the refusal of the defendant to pay the full amount due, without the deduction of $3,200, was a breach of the defendant's part of the contract of June, 1917, and that plaintiff was thereby excused from tendering the remainder of the iron included in that contract, and was entitled to damages for the breach, as prayed for in the second cause of action. The defendant, on the other hand, maintains that his refusal to pay for the iron already delivered, except upon the condition that the claimed credit be allowed, did not excuse the plaintiff from making delivery of the remainder of the iron; that the defendant was ready and willing to receive and pay for it, and was entitled to the delivery thereof even if he had failed to pay for previous deliveries under the contract.

The first question to be considered is whether the defendant's refusal to pay for the iron already delivered, without deduction, constituted a breach of the contract. The contract was for the sale of a definite quantity of iron, to be delivered by the car-load, the defendant agreeing to pay for each car-load as delivered, the delivery of all the iron to be completed by a definite date. The amount due for each car-load was to be determined by railroad weights.

"In this country the broad view taken in the majority of cases, in the absence of statute to the contrary, is that where a contract of sale provides for deliveries in instalments and the payment of the price of each instalment as delivered or within a stated time thereafter and before the delivery of the following instalment is due default in the payment is made, the seller may rescind the contract, and if he does so cannot be held liable for damages for the failure to make delivery of subsequent instalments. * * * Likewise it is immaterial that the refusal to pay is put on the ground of a claim by the buyer for damages for breaches by the seller of other contracts or

with respect to default in prior instalments." 24 R. C. L. 280, sec. 559.

In opposition to the foregoing view, which is approved by a majority of the courts in the United States, the defendant cites *Myer & Dostal v. Wheeler & Co.*, 65 Ia. 390, and other Iowa cases in which a contrary view is expressed. We adhere, however, to the majority view, as supported not only by the weight of authority but by the better reasoning. In accordance with that view, it must be determined that the defendant's refusal to pay for the iron previously delivered except upon condition that a credit be allowed him was a breach of the contract for which the plaintiff was entitled to maintain the second cause of action. This conclusion is consistent with the rule laid down by this court in *Funke v. Allen*, 54 Neb. 407: "If a vendee in an executory contract of sale, or where the title of the property has not passed to him, refuses to perform, a right of action for damages arises in favor of the vendor for the injury or loss he has sustained by reason of the breach of the contract, and this is ordinarily or generally the difference between the market value of the property at the time and place of delivery, and the price fixed by the contract."

*Mundt v. Simpkins*, 81 Neb. 1, is cited by defendant on the proposition that plaintiff cannot at the same time rescind the contract of sale and sue for damages for its breach. In that case the defendant was sued on a note which he had given for a traction engine. He set up that he had rescinded the contract and returned the engine because it failed to fulfil a warranty, and at the same time counterclaimed for repairs, loss of time, etc., arising from the breach of warranty. The court held that, as a general rule, a party who counterclaims for damages for breach of a contract will be held to have affirmed it, and cannot be heard to assert its nonexistence.

The case is not parallel with the case at bar, in which the delivery of the entire quantity of iron had not been completed, and the seller claimed the right to rescind

and that he was relieved of the duty to make further deliveries because of the purchaser's breach. In *Mundt v. Simpkins, supra,* the contract of sale was fully executed on the seller's part by delivery of the engine, and the question was whether the purchaser could disaffirm and rescind the sale and defeat an action for the purchase price because the engine failed to fulfil the warranty, and at the same time maintain his counterclaim for repairs purchased and time lost in the effort to make the machine work. It was held that, as a general rule, one cannot rescind an executed contract and thereby assert its nonexistence, and at the same time affirm it for the purpose of asserting a counterclaim for damages for its breach. This court, however, decided in *Mundt v. Simpkins, supra,* that the purchaser was entitled to maintain his counterclaim under an exception to the general rule, but reversed the case because of failure of proof to establish rescission. In the instant case the question is whether the seller may rescind an executory contract of sale for failure of the buyer to pay an instalment of the purchase price and recover damages for the buyer's breach. Of his right so to do there can be no doubt under the authorities hereinbefore cited. See, also, 35 Cyc. 131 *et seq.*

There was no error prejudicial to the defendant in the instructions of the court relative to the plaintiff's second cause of action except in the reference therein to the alleged parol release of defendant's claim under the November, 1916, contract; and defendant's requested instruction No. 5 was properly refused.

It follows from the error in the admission of parol evidence of the alleged release of defendant's claim under the November, 1916, contract, that instructions Nos. 3, 4 and 5, given on the court's own motion, are erroneous in so far as they permit the jury to consider such evidence. On a retrial the question is still presented, by the pleadings on defendant's counterclaim, whether or not the November, 1916, contract was, in fact, breached

by the plaintiff and, if so, the amount of the defendant's damages. We recommend that the judgment appealed from be reversed and the cause remanded for a new trial.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings, and this opinion is adopted by and made the opinion of the court.

REVERSED.