**A. L. Robbs, Appellee, v. Illinois Rural Rehabilitation Corporation, Appellant.**

Opinion filed March 2, 1942.

Norman M. Littell, Assistant Attorney General, Arthur Roe, United States Attorney, George R. Schwarz, Special Attorney, Vernon L. Wilkinson and W. Robert Koerner, both of Washington, D. C., for appellant.

D. L. Duty and L. A. Colp, both of Marion, for appellee.

Mr. Justice Dady delivered the opinion of the court.

This is an appeal from a judgment for $25,000 recovered by plaintiff against defendant in an action for damages for the breach of certain oral promises alleged to have been made by defendant.

The complaint alleges that in addition to the consideration stated in certain written options these oral promises were a part of the consideration for the conveyance of five tracts of land by the plaintiff to the defendant. The answer denies that any such oral promises were made or that they were any part of

the consideration for the conveyances in question, but alleges that the lands were conveyed for a stated and agreed consideration pursuant to certain options in writing.

The plaintiff Robbs at the times in question owned and operated at the town of Robbs, Illinois, a hotel, general store, lumber yard and numerous other business enterprises. In 1934 the Federal Government through the Agricultural Adjustment Administration undertook development of a large area near the town of Robbs for an agricultural experiment or demonstration area to be known as the Dixon Springs Agricultural Project. At that time the Agricultural Adjustment Administration employed as manager of the Dixon Springs project one Norton. In purchasing land for this project, Norton foresaw that a number of families who lived in the area would be dislocated, and that some means for their resettlement had to be provided. Accordingly, he undertook to procure options on other lands near the town of Robbs, which might be purchased for the resettlement of such families.

In late August or early September of 1934, Norton approached the plaintiff, who then owned the farm land here involved. After some negotiations with Norton for the sale and transfer of such lands, the plaintiff executed and entered into with the United States of America by the Federal Emergency Relief Administrator, five written agreements under seal, entitled "For the Lease of and an Option to Purchase Lands." Four of these instruments were executed by the plaintiff on September 7, 1934, the fifth on November 16, 1934. The material provisions of these agreements insofar as the sale and transfer of the real estate are concerned are alike, except in matters of description, rental, purchase price, etc. The following stipulations, *mutatis mutandis*, are to be found in all five agreements: "4. In consideration of $1 in hand paid by the United States, the receipt of which

is hereby acknowledged, the Administrator shall have the right to purchase for the United States, and the lessors will convey to the United States, at any time on or before June 30, 1937, . . . upon the terms and conditions hereinafter set forth, (certain described lands) and the option to purchase herein granted shall be effective from the date of the signature of the lessors hereto.

"5. That the price at which said land will be sold to the United States, as hereinbefore provided, shall be as follows:

"(a) $3,300.00 for the tract as a whole, with all buildings and improvements thereon . . .

"6. The lessors . . . agree that at the date of this instrument the title to the said land is clear, free and unencumbered except as hereinafter noted; that the lessors have . . . authority to convey, and that if the aforesaid option is exercised, they will convey to the United States the fee simple title thereto clear, free, and unencumbered, except subject to the following easements: None, and will do or suffer no act whereby such title may be diminished or encumbered; . . . .

"7. The lessors will execute and deliver upon demand of the . . . agents of the United States, . . . a good and sufficient deed of warranty conveying to the United States a safe title to the said lands, of such character as to be satisfactory to the Attorney General of the United States, . . .

"8. In consideration whereof (i.e. the lessors' covenants to convey clear title, by warranty deed), the said Administrator, for and in behalf of the United States of America, covenants and agrees that, if the aforesaid option is exercised, he will purchase said lands at the price of $3,300.00 for the tract as a whole, including all improvements. . . .

"9. That said Administrator, in the same behalf, further covenants and agrees that, after the execution, delivery, and recordation of the said deed and the sign-

ing of the usual Government voucher or vouchers therefor, and after the Attorney General of the United States shall have approved the title thus vested in the United States, he will cause to be paid to the lessors the purchase price by a United States Treasury warrant or disbursing officer's check.

"10. It is mutually understood and agreed that the Administrator will obtain an abstract of the title to the property hereinbefore described without cost to the lessors, but lessors will provide any abstract in their possession or obtainable by them, and pay all stamp taxes on execution of the deed.

"14. While this agreement is primarily intended to be entered into by the United States by and thru the said Administrator, yet it may be entered into by and thru any other officer or agency of the United States authorized thereunto, and the optional rights hereby granted may be availed of by the United States thru any other officer of agency authorized to purchase or lease said land."

On September 7, 1934, defendant was incorporated under Illinois law with power to acquire and hold real property. After the establishment of this corporation said five instruments were mailed by Norton to one C. H. Humphrey, who at that time was a director of the Emergency Relief Commission of the State of Illinois, and also an incorporator and secretary of the defendant corporation. These instruments were in due course accepted by Humphrey on behalf of the defendant, and pursuant to such instruments the lands in question were duly conveyed by the plaintiff to the defendant by deeds executed between May 27, 1935 and February 1, 1936. The purchase prices stipulated in the options and recited in the deeds were paid in full. The parties do not question, and we assume that the defendant was duly entitled to and properly exercised the options in question.

The plaintiff in his brief contends that in return for the conveyances of the lands in question the defendant

agreed not only to pay the respective amounts specified in the written options and recited in the deeds, but further orally agreed as part of the consideration for the conveyances of the land in question to settle not less than 125 dwellings on home sites laid out and built thereon, to pay the plaintiff $27,500 for the construction of an electric power plant, and to procure contracts from the occupants of such home sites for the plaintiff to furnish them with electric light and power. In other words, the entire case of the plaintiff is based solely on the breach of such alleged oral agreements.

The trial court, over the objection of the defendant, permitted the introduction of evidence by the plaintiff tending to show the alleged oral agreements. The controlling question in this case is whether the court erred in admitting this parol evidence.

Defendant contends the written options duly accepted by it embodied the complete agreement of the parties for the sale of the lands and that its liability for the conveyances must be limited to the prices stated in the options, and it was therefore error for the trial court to admit evidence of the alleged oral agreements tending to establish that defendant was liable for a consideration in addition to that expressed in the options.

It is important to consider the nature and effect of the written options executed by the plaintiff in this case. In *Mitzlaff v. Midland Lumber Co.,* 338 Ill. 575, the court said: "An option contract is one by which the owner of property agrees with another person that the latter shall have the right to buy the former's property at a fixed price within a certain time. The owner does not then sell his land or any interest in it, or agree to sell, but he does sell the right or privilege to buy at the option of the other party. The second party gets, *in praesenti,* not lands or an interest therein or an agreement that he shall have lands, but the right to call for and receive lands if he so decides. (*Keogh v. Peck,* 316 Ill. 318.)" An option contract is

unilateral. The optionee has the right to purchase upon the terms and conditions named. He, however, is not bound to do so. *Lake Shore Country Club v. Brand,* 339 Ill. 504. When the option is exercised the contract becomes bilateral and binds both parties and is enforceable at the instance of either party. *Macy v. Brown,* 326 Ill. 556.

The written options in this case contained all of the essential elements for the sale of the lands involved. Each of the written instruments contained the names of the parties, a description of the land, the price to be paid, a provision as to the furnishing of an abstract, a provision as to the title to be conveyed, a provision as to when the purchase price should be paid, and the time in which the option must be exercised.

In *Telluride Power Transmission Co. v. Crane Co.,* 208 Ill. 218, 226, the court said: "The rule is, that when the writings show, upon inspection, a complete legal obligation, without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included in the writings. The fact that a point has been omitted which might have been embodied therein will not open the door to the admission of parol evidence in that regard. . . . The rule is too well recognized to require citation of authorities that all preliminary negotiations, whether oral or written, are merged in the written contract." See 22 C. J. 1098.

In *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102, 106, the court said: "When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing. All con-

versations and parol agreements between the parties prior to the written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement. . . . But the contentions of the parties to the contract are not the criterion which should guide the court in determining whether the written contract is a full expression of the agreement of the parties. The court must determine this from the writing itself. If it imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,— it is to be presumed that the parties introduced into it every material item and term, and parol evidence cannot be admitted to add another term to the agreement although the writing contains nothing on the particular term to which the parol evidence is directed.''

From the foregoing authorities it is apparent to us that the written options must be regarded as a complete expression of the whole agreement for the sale of the lands, and that the alleged oral agreements which were not incorporated into the written instruments must be regarded as intentionally rejected by the parties. A similar situation was presented in the case of *Spiegal & Son v. Alpirn,* 107 Neb. 233, 185 N. W. 415, where it was sought to show by parol that there was in reality another consideration for certain materials in addition to the stipulated price set forth in a written contract. In holding that parol evidence was inadmissible to show such additional consideration, the court said: ''Parties negotiate and presumably discuss and agree upon everything to be done by either party pertaining to the subject of the negotiations. They put the result of their negotiations in writing and the writing covers and includes everything necessary to make a binding contract. Its covenants are mutual and it sets out in detail the precise contractual obli-

gations which each party assumes in consideration of the obligations assumed by the other. One agrees to sell and deliver, the other agrees to purchase and pay a certain definite price for the thing sold. Afterwards the seller asserts that he was induced to sign the contract not on account of the consideration moving to him by the terms of the writing itself, but by an agreement made by the buyer that, in addition to the payment of the stipulated price, he would release an existing obligation of the seller under another contract, and that the promise to release formed the condition upon which he entered into the contract in question. If permitted to show such an alleged preliminary agreement in this case, in which there is no question of the completeness and definiteness of the contract on its face, no case could be imagined in which it would not be possible for one party or the other by parol evidence to insert new conditions into the contract or for one party to impose added burdens upon the other." See also *Mitchill v. Lath,* 247.N. Y. 377, 160 N. E. 646.

It must be noted that the price or consideration named in the option contracts are not mere recitals but are contractual in nature. The rule is that where the statement in a written instrument as to the consideration is more than a mere recital and is of a contractual nature parol or extrinsic evidence is not admissible to vary or contradict the consideration expressed in writing. *Cary v. Manfull,* 41 Wyo. 476, 287 Pac. 433, 5 Wigmore, section 2433 (2d Ed.).

It is common knowledge that the period of an option may extend over some time and during the interim property may increase or diminish in value. Therefore, the intrinsic value of every option lies in the certainty that if it is exercised by the optionee within the time specified, the seller must deliver at the price fixed in the option, regardless of any fluctuations in the value of the property which may occur while the option is in force. To hold that where parties have taken the precaution to reduce an option agreement to writing,

the person giving such option may prove contemporaneous parol agreements changing the price fixed in the option, would indeed frustrate the whole force and purpose of the option. It is clear to us that this cannot be done and it was error for the trial court to permit evidence as to the alleged oral agreements. Plaintiff was not compelled to enter into the contracts in question. He makes no charge of fraud or mistake nor does he claim that the oral agreements were collateral to and independent of the option contracts, or that such oral agreements were intended as a modification of the option contracts themselves. If the agreement was as plaintiff contends, he could have insisted that they be inserted in the options and he could have refused to enter into the same if such agreements were not so inserted. We think the options contained a complete statement as to the consideration and plaintiff is in no position to complain that they were not complete in that respect.

The plaintiff relies on the case of *Ludeke v. Sutherland,* 87 Ill. 481, and many other cases holding that the true consideration for a deed may always be shown by parol evidence. The primary purpose of a deed is to transfer title in execution of an agreement, and a deed ordinarily does not undertake to show what the purchase agreement was, and the consideration named in the ordinary deed is merely a recital and not contractual in nature, and for these reasons parol evidence in such cases is admissible to show the actual consideration although it may not be the same as that recited in the deed. Therefore, we do not consider such cases applicable to the facts in this case.

Other alleged errors are assigned by defendant, but inasmuch as it is our opinion that the plaintiff did not make out a prima facie case there is no occasion for our discussing any other errors so assigned.

For the reasons indicated the judgment of the trial court is reversed:

*Reversed.*