JOSEPH F. ARMAN, APPELLEE, V. STRUCTIFORM ENGINEERING CO., INC., A CORPORATION, APPELLANT.

24 N. W. 2d 723

FILED OCTOBER 25, 1946. No. 32085.

*Cook & Cook* and *Sidner, Lee & Gunderson,* for appellant.

*Abbott, Dunlap & Abbott,* and *William H. Lamme,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Joseph F. Arman, as plaintiff, brought this action in the district court for Dodge County against Structiform Engineering Company, Inc., a corporation, as defendant.

The nature of the action is to recover the balance due on two separate contracts of employment, one being written and the other oral. The issues in dispute arise with reference to the claimed oral agreement, the written contract being admitted.

The jury found for the plaintiff and from the judgment

entered thereon, after its motion for new trial had been overruled, the defendant appeals.

The record presents a case where the evidence is very conflicting. In fact, the appellee's testimony with reference to his claim of a separate oral contract of employment is completely denied by appellant. Under these circumstances "It is the province of the jury to harmonize the testimony in so far as that is possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses. Wahlgren v. Loup River Public Power District, 139 Neb. 489, 297 N. W. 833." Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168. And "Where questions of fact have been properly submitted, and have been determined by the jury, which has seen and heard and observed the demeanor of the witnesses, we will not, ordinarily, disturb the verdict." Dougherty v. Omaha & C. B. Street Ry. Co., 113 Neb. 356, 203 N. W. 538. " * * * when the evidence is conflicting the verdict of the jury will not be set aside, unless it is shown to be clearly wrong." Grimm v. Elkhorn Valley Drainage District, 98 Neb. 260, 152 N. W. 374.

Therefore, we will not discuss the facts other than where it is necessary to do so in connection with propositions upon which the appellant relies for reversal.

It is the appellant's contention that appellee is conclusively bound by every statement against his interest which he has made in his pleadings and will not be allowed to question the correctness thereof. This is stated in appellant's assignment of error as follows: "The court erred in permitting the defendant to plead and prove a set of facts in direct conflict with two sworn petitions previously filed in the same action."

This contention arises out of the fact that the appellee, in his original petition filed on March 22, 1944, alleged, with reference to the oral agreement, which is here in dispute, as follows: "That shortly after the 26th day of October, 1942, the plaintiff entered into an oral agreement with

the defendant corporation whereby the plaintiff agreed to act as expeditor and to assist in obtaining materials and priorities for the construction of housing units * * * ."

It should be here stated that October 26, 1942, is the date of the written agreement entered into between the parties hereto wherein the appellee agreed to become the general manager of the appellant corporation and which contract is not disputed by either party.

After appellant had filed its motion asking that appellee be required to make his petition more specific and certain by setting out the date that he claims the oral agreement was made, appellee filed his amended petition on July 29, 1944, alleging with reference thereto as follows: "That shortly after the execution of said written agreement Exhibit 'A', and on or about November 16, 1942, said agreement, at the special instance and request of the defendant, was enlarged, modified, and amended by an oral agreement between plaintiff and the defendant whereby the plaintiff agreed to act as expediter and coordinator for the defendant company for the purpose, * * * ."

Appellant, by its demurrer and answer to this amended petition, raised the failure of the appellee to allege the approval of the Commissioner of Internal Revenue to an increase of salary after October 3, 1942, in accordance with the provisions of the Wage Stabilization Act passed by Congress on October 2, 1942, and the executive orders of the President issued pursuant thereto.

Thereafter, on December 9, 1944, the appellee filed his second amended petition wherein he alleged with reference to the oral agreement as follows: "That on or about May 25, 1942, by reason of disagreement between said Robert B. Cook and the officers of the defendant corporation, the said Robert B. Cook was relieved of his duties and discharged from his employment as expeditor and coordinator by the defendant corporation, and plaintiff at the instance and request of the defendant, through its officers and directors then acting, orally agreed that in addition to his duties as

general manager, he would also act as expeditor and co-
ordinator for defendant corporation and assume the duties
theretofore undertaken by Robert B. Cook, * * * ."

Appellant's counsel cross-examined the appellee at con-
siderable length as to the allegations in these prior plead-
ings and the appellee sought to explain the possible reason
for the inconsistency. These prior pleadings, verified by
appellee's counsel, were offered and received in evidence.
The rule with reference thereto has been previously stated
by this court in Miller v. Nicodemus, 58 Neb. 352, 78 N. W.
618, as follows:

"When a litigant files an amended pleading, the aver-
ments of which are inconsistent with the averments of his
original pleading, the original is evidence in the case as an
admission of the litigant contrary to his claim in the
amended pleading.

"Such original pleading is not conclusive evidence, but
competent, and to be given such weight as the trier of fact
deems it entitled."

This same rule has been more recently stated by this
court in In re Estate of McCleneghan, 145 Neb. 707, 17
N. W. 2d 923, as follows: " ' * * * the rule is well established
that a pleading which has been superseded by an amended
pleading is only evidence of the facts therein alleged, and
must be introduced as any other evidence in order to be
considered. Shipley v. Reasoner, 87 Ia. 555. The reason
for this is evident: A party may, through inadvertence,
mistake, or misinformation, make admissions of facts
which have no existence, or are inconsistent with the state-
ments of his amended pleading. If the original pleading is
before the court for its consideration, without being offered
in evidence, the party making such admissions has no op-
portunity to explain the circumstances under which they
were made, and is thus faced with an admission which
might, perhaps, be easily explained and its force wholly
avoided.' " See Robert v. Hefner, 81 Neb. 460, 116 N. W. 36.

The procedure in the trial court was in accordance with

this rule and the contention of the appellant is therefore without merit.

Appellant contends that the trial court erred in overruling its objection and permitting the appellee to testify as to the oral agreement which he claims he had with the appellant for the reason that such ruling violates the parol evidence rule which is a rule of substantive law.

As stated in Theno v. National Assurance Corporation, 133 Neb. 618, 276 N. W. 375: "The parol evidence rule is not merely one of evidence, but is a rule of substantive law, which declares that certain kinds of facts are legally ineffective, and forbids such facts to be proved at all." See Restatement of the Law, Contracts, § 237, comment (a), p. 332.

The record discloses that appellant was incorporated in the State of Illinois on April 2, 1942, and that Charles C. Kirk, P. H. Waller, Phillip Stark, and L. J. Rahn were officers and directors thereof, Waller being president and Kirk executive vice-president. Part of its business was the construction of prefabricated housing units and was conducted under what is referred to as its housing division.

Over objection the appellee was permitted to testify as follows:

That he was a general contractor and about March 25, 1942, through Robert B. Cook and Barr Williamson, he contacted Kirk and Waller at the appellant's office at 234 South Wabash Avenue, Chicago, Illinois. Appellee was then advised that they were looking for a general manager for their housing division and they discussed the work to be done and his qualifications. On the following evening he again met with Kirk, Waller, Cook, and Williamson. He there met Stark and Rahn and the same matters were discussed. Three days thereafter all of these parties again met at the above address and discussed the matter of appellee becoming general manager and of Cook becoming expediter of appellant's housing division, their respective duties, and the basis of their pay. Nothing was definitely agreed to at this meeting but around the middle of April

appellee and Cook were called back for a meeting with the officers of appellant at which time Kirk, Waller, Stark, and Rahn were present. At this meeting appellee was employed as general manager and Cook as expediter of the housing division on the basis of each receiving $25 per unit. These contracts were to be in writing and to be drawn up by Kirk. Appellee thereafter went to work in the latter part of April 1942 and continued until sometime in March 1944.

About the first week in June 1942, Cook quit because of trouble with Kirk. Thereafter, about the middle of June, appellee asked Waller about Cook and who was going to take over his work. Waller then asked appellee if he would take it over. Thereafter, in the latter part of June 1942, appellee met with the officers of appellant and they agreed that he was to do the work of expediter in place of Cook and to receive the same pay of $25 per unit or a total of $50 per unit for both jobs. That it was discussed by the board that Kirk was refusing to include this agreement in appellee's written contract as general manager because no release had been obtained from Cook. Because thereof it was understood that the agreement to pay appellee this additional amount for work as expediter was not to be included in his written contract as general manager. The release from Cook was obtained, dated May 22, 1943, but no written contract was ever drawn evidencing this oral agreement. Appellee's contract as general manager was signed as of October 26, 1942. After Cook quit appellee did all the work as expediter in connection with all units sold by the appellant. This testimony finds support in other evidence offered by appellee.

In regard to the parol evidence rule we said in Spiegal & Son v. Alpirn, 107 Neb. 233, 185 N. W. 415: " * * * where a written contract, signed by both parties, is complete in itself, and contains and expresses the mutual covenants and promises of both, without ambiguity or apparent omission; where the statement of the consideration therein is of a contractual nature, and not a mere acknowledgment of receipt, parol evidence is not admissible to contradict,

vary or add to the consideration expressed in the instrument itself." See Dunn v. Mutual Benefit Health & Accident Ass'n, 135 Neb. 506, 282 N. W. 487. This finds further expression in the case of Robbs v. Illinois Rural Rehabilitation Corporation, 313 Ill. App. 418, 40 N. E. 2d 549, in the following from Telluride Power Transmission Co. v. Crane Co., 208 Ill. 218, 70 N. E. 319, as follows: "The rule is, that when the writings show, upon inspection, a complete legal obligation, without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included in the writings. The fact that a point has been omitted which might have been embodied therein will not open the door to the admission of parol evidence in that regard. . . . The rule is too well recognized to require citation of authorities that all preliminary negotiations, whether oral or written, are merged in the written contract."

In Restatement of the Law, Contracts, § 237, p. 331, the parol evidence rule, insofar as it is here involved, is stated as follows: "PAROL EVIDENCE RULE; EFFECT OF INTEGRATION ON PRIOR OR CONTEMPORANEOUS AGREEMENTS. Except as stated in sections 240, 241 the integration of an agreement makes inoperative to add to or to vary the agreement all contemporaneous oral agreements relating to the same subject-matter; * * * ."

Referring to the exception, we find the following in Restatement of the Law, Contracts, § 240, p. 335: "IN WHAT CASES INTEGRATION DOES NOT AFFECT PRIOR OR CONTEMPORANEOUS AGREEMENTS. (1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and (a) is made for separate consideration, or (b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

A discussion of the above is found in IX Wigmore on

Evidence (3 ed.), § 2430, p. 97, from which we quote in part:

"The most usual controversy arises in cases of *partial integration, i. e.* where a certain part of a transaction has been embodied in a single writing, but another part has been left in some other form. Here obviously the rule against disputing the terms of the document will be applicable to *so much of the transaction as is so embodied, but not to the remainder.*

"It is of course incorrect to assume that what was not so embodied was in truth a part of that *same* transaction; it may have been a totally distinct transaction, merely coinciding in time. * * *

" * * * the inquiry is whether the writing was intended to cover a *certain subject* of negotiation; for if it was not, then the writing does not embody the transaction on that *subject*; and one of the circumstances of decision will be whether the one subject is so associated with the others that they are in effect 'parts' of the same transaction, and therefore, if reduced to writing at all, they must be governed by the same writing.

"In searching for a general test for this inquiry, three propositions at least are capable of being generally laid down:

"(1) Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto. * * *

"(2) This intent must be sought where always intent must be sought * * *, namely, in the *conduct and language* of the parties and the *surrounding circumstances*. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. * * * There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con*, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writ-

ing, he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place. * * *

"(3) In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by most careful judges, and is in contrast with the looser and incorrect inquiry (*post,* section 2431) whether the alleged extrinsic negotiation contradicts the terms of the writing: * * *."

In accordance with the above rules the court submitted this issue by the following taken from instructions No. 1 and No. 4:

"Plaintiff claims in his pleadings and in the evidence that in addition to his written contract of October 26, 1942, which has been identified as Exhibit D-1 and read to you as part of the evidence and which entitles him to $25.00 per housing unit for the services therein described and which services plaintiff describes in a general way as general manager, that there was a prior oral agreement distinct from the written agreement, Exhibit D-1, which oral agreement plaintiff claims was entered into in early June, 1942, and which he claims entitles him to $25.00 per housing unit for services other than and different from those described in the written agreement which services plaintiff describes in a general way as expediter and coordinator. * * *

"The burden in this case is on the plaintiff who in order

to recover herein must establish the following facts by a preponderance of the evidence, to-wit:

"(a) That in addition to the written contract there was an oral contract between him and the defendant which entitled him to $25.00 per housing unit in addition to the $25.00 per housing unit provided for in the written contract, Exhibit D-1.

"(b) That the services covered by the alleged oral contract were in addition to and different from the services contracted for in the written contract, Exhibit D-1."

Appellee's testimony, which finds support in other evidence that he offered, shows an oral agreement to do work not covered by the written agreement and one based on separate consideration and under the circumstances such an agreement as might naturally be made a separate agreement by the parties thereto.

Under the foregoing rules we do not think the court erred in the admission of this testimony for evidence tending to establish a separate oral agreement between the parties, based on a separate consideration, is admissible as to matters upon which such written contract is silent, if such oral agreement does not tend to vary or contradict the terms of the written agreement and is such an agreement as might naturally be made a separate agreement by parties in their situations.

In this connection the appellant contends there is no consideration for this oral agreement because it did not require the appellee to do anything which he was not already required to do under the written agreement. It states this contention in the following language: "We challenge the plaintiff to set out in his brief any evidence as to anything which the plaintiff did for the defendant that he wasn't called upon to do in the written contract, * * *."

The written contract of October 26, 1942, provided in section 3 with reference to appellee's duties as general manager of the housing division as follows: "The duties and rights of said ARMAN shall be the general management of

the business of said DIVISION, and he shall assist in the manufacture, sale and delivery of all housing units to purchasers thereof, procure subcontractors, submanufacturers and suppliers acceptable to said CORPORATION, and negotiate all arrangements in connection therewith, supervise the preparation of plans and specifications, submit bids, and generally to perform the duties of general manager of the DIVISION, devoting as much time as may be necessary." It will be noticed that his employment did not necessarily require his full time but only "as much time as may be necessary," he being paid on a unit and not a salary basis as provided in section 7-a of the contract.

Appellee described what he considered were his duties as general manager and as expediter and tells what he did that he considered came within the classification of both jobs. We think that some of the things which he describes as coming within the field of work as an expediter came within the purview of his duties as general manager of the housing division, particularly with reference to those provisions thereof which define his duties as follows: "* * * he shall assist in the * * * delivery of all housing units to purchasers thereof, procure subcontractors, * * * and suppliers acceptable to said CORPORATION, * * * and generally to perform the duties of general manager * * * ."

However, we think that the following acts which he testifies to having done as expediter do not come within his duties as general manager: Trips to the field where contracts have been let to see the erecting contractor for the purpose of selecting sites where the material could be unloaded when it reached the project and to see that all panels were covered to protect them against the weather, particularly rain and snow; three or four days at Merrimac, Wisconsin, to assist in correcting trouble that had developed on that job in connection with assembling the building units; four or five days spent in connection with the Savannah, Illinois, project of 250 units in order to check the roof panels, determine the extent of the damage there, and fix the re-

sponsibility therefor; about ten days on the Merrimac, Wisconsin, project of 500 units to remove the objections made by the government before final approval could be obtained, hiring carpenters to fix and thereby remove the cause of these objections; the same being true on the Savannah, Illinois, project of 250 units where difficulty was experienced with the roofs. Delay was experienced in the project of 430 units at Provo, South Dakota, because the drilling equipment of the contractor unexpectedly encountered rock. It was therefore necessary to get a machine that would handle the rock. After scouting through five different cities the appellee finally located two automatic drilling machines that would handle the situation. One of these was put in operation and work on this project went forward. Other instances of such work appear in the record.

This issue was submitted to the jury by the following instruction: "That the services covered by the alleged oral contract were in addition to and different from the services contracted for in the written contract * * *."

We think this issue was properly submitted to the jury and there is sufficient competent evidence to sustain their finding.

It is the appellant's further contention that under our holdings in National Supply Co. v. Chicago & N. W. Ry. Co., 108 Neb. 326, 187 N. W. 917, and Federal Farm Mortgage Corporation v. Hughes, 137 Neb. 454, 289 N. W. 866, we should take judicial notice of the letter of January 31, 1945, issued from the office of the Commissioner of Internal Revenue and under the principle of law announced in Martinez v. Johnson, 61 Nev. 125, 119 P. 2d 880, dismiss the appellee's action.

This principle is therein stated as follows: " * * * that an act done, or contract made, in disobedience of the law, creates no right of action which a court of justice will enforce. 13 C. J. sec. 440; 17 C. J. S., Contracts, sec. 272; Drexler v. Tyrrell, 15 Nev. 114." See, also, Hunt v. Raw-

leigh Medical Co., 71 Okl. 193, 176 P. 410, and Roddy v. Hill Packing Co., 156 Kan. 706, 137 P. 2d 215.

A certified copy of this letter was offered in evidence and appears in the record as follows:

"TREASURY DEPARTMENT
Washington 25

Office of
COMMISSIONER OF INTERNAL REVENUE
Structiform Engineering Company,

JAN 31 1945

234 South Wabash Avenue,
 Chicago, Illinois.
 Attention: Mr. Charles C. Kirk,
  Executive Vice President.

Gentlemen:

Reference is made to your letter dated January 12, 1945 requesting reconsideration of rulings of the Salary Stabilization Unit with respect to your applications dated September 15, 1944 and November 14, 1944 concerning the compensation of Mr. Joseph F. Arman, formerly an employee of your company, and furnishing further information relative thereto.

According to the information now before this office, it appears that Mr. Arman was employed by you as general manager on or about October 14, 1942, and that a written employment agreement was entered into on October 26, 1942, a copy of which is attached to your letter dated September 15, 1944, above referred to. It further appears that Mr. Arman claims that on or about November 16, 1942 the said written agreement was enlarged, modified and amended by an oral agreement, and that suit is now pending in the District Court of Dodge County, Nebraska, concerning his employment with your company.

Since the employment of Mr. Arman involved the establishment of a new job classification after October 3, 1942, and the salary rates provided for by the written contract appear to be not in excess of those prevailing for similar

job classifications within your own organization or within the local area on September 15, 1942, approval is not required for payments made in accordance with the terms of said written contract.

Any amount paid to or received by Mr. Arman in excess of the amount of payments provided for by the terms of said written contract will be considered as a salary increase such as may not be made without prior approval of the Commissioner of Internal Revenue.

This ruling, which it should be understood is for salary stablilzation purposes only, is based upon the information contained in the file of your case. If the information is subsequently found to be incorrect, this ruling shall have no force or effect.

By direction of the Commissioner.

Very truly yours,
W. A. Gallahan
Acting Deputy Commissioner."

This contention requires an examination of the Stabilization Act of 1942, as passed by Congress on October 2, 1942, (50 U.S.C.A., §§ 961-971, pp. 450-459), amending the Emergency Price Control Act of 1942, as passed by Congress on January 30, 1942, (50 U.S.C.A., §§ 901-924, pp. 313-386), the executive orders and regulations issued pursuant thereto together with the regulations formulated and approved to carry out and enforce the same to see if they are applicable, for the appellee did not have the approval of the Commissioner of Internal Revenue as therein provided.

First, was the Act created for the purpose of dealing with factual situations where the question of whether the contract was actually entered into or not is in dispute? We think not.

The purpose of the Act is stated in the Stabilization Act of 1942 (50 U.S.C.A., § 961, p. 450) as follows: "In order to aid in the effective prosecution of the war, the President is authorized and directed, on or before November 1, 1942, to issue a general order stabilizing * * * wages, and salaries,

affecting the cost of living; and, except as otherwise provided in this Act, such stabilization shall so far as practicable be on the basis of the levels which existed on September 15, 1942." This same purpose is expressed in the last paragraph of the letter hereinbefore set forth wherein it is stated: "This ruling, * * * is for salary stabilization purposes only, * * *." We do not think that the Act, or any order or regulation issued pursuant thereto, conferred upon the Commissioner of Internal Revenue or any other administrative officer appointed or directed to carry out its purpose, the authority to determine the factual issue of whether or not a contract of employment had been entered into by the parties. Its purpose was to deal solely with contracts of employment existing at the time of the enactment or those to be entered into or to become effective thereafter. The question as to whether or not a contract existed, where the same was in dispute, was left to the courts and was here properly submitted to the jury.

Second, if the contract was entered into prior to October 3, 1942, was approval by the Commissioner of Internal Revenue necessary?

This issue was submitted to the jury by the following instruction: "The burden in this case is on the plaintiff who in order to recover herein must establish the following facts by a preponderance of the evidence, to-wit: * * * (c) That the alleged oral contract, if you find that one was entered into between plaintiff and defendant, was entered into prior to October 3, 1942. In explanation of this the court advises the jury that on October 3, 1942, a United States law or regulation went into effect requiring approval by the proper officials of contracts such as the oral contract alleged by plaintiff before it could become effective. This regulation did not apply to contracts made prior to October 3, 1942, but does apply to those made after that date. It is not shown or claimed that the alleged oral contract was ever approved by the proper United States official and therefore if it was made after October 3, 1942, it was invalid and plaintiff cannot recover thereon."

The Act and regulations, insofar as the subject matter here is concerned, went into effect on October 3, 1942, with the purpose of stabilizing wages and salaries then existing but, insofar as practicable, to be measured by the level existing on September 15, 1942. There is nothing in the Act or regulations that seeks to make it retroactive and prior to October 3, 1942, no approval was required. This is further evidenced by the following applicable provision from the regulations of the Commissioner of Internal Revenue: "Where an employer had, prior to October 3, 1942 customarily paid a salary or salaries on a fixed percentage basis, or had entered into a contractural agreement prior to that date to pay a salary or salaries on a fixed percentage basis, such employer may continue to pay, without the approval of the Commissioner of Internal Revenue, such salary or salaries determined in accordance with such custom or agreement, provided no change has been made in the percentage or method of determining the amount payable." Regulation 1002.14 issued September 26, 1944, 9 Federal Register 11838.

This is also in accordance with the letter of January 31, 1945, issued from the office of the Commissioner of Internal Revenue. Therein the date of November 16, 1942, a date after October 3, 1942, is taken for the purpose of ruling but it will be noticed that in the closing paragraph it is expressly set forth that "This ruling, * * * is based upon the information contained in the file of your case. If the information is subsequently found to be incorrect, this ruling shall have no force or effect." It is apparent from the communication as a whole that the Commissioner was not attempting to make a finding of fact as to when the contract became effective.

We do not think the Act requires any approval of contracts of employment in existence and in full force and effect prior to October 3, 1942, and the instruction properly submitted that issue to the jury.

In this respect we have not overlooked certain cases cited by appellant where requirements contained in federal

acts or regulations were held to be conditions necessary to be performed in order to state a cause of action. But in those cases either by the pleadings, as in Kells v. Boutross, 184 Misc. 206, 53 N.Y.S. 2d 734, or by findings of fact, as in Morrison v. Hutchins, 158 Kan. 123, 144 P. 2d 922, and Lester v. Isaac, 63 Cal. App. 2d Supp. 851, 146 P. 2d 524, the subject matter was brought squarely within the purview of the Act.

Such would be the situation here, if the contract was made and entered into after October 3, 1942, and such was the effect of instruction No. 4-c by which this question was properly submitted to the jury.

Appellant contends that under the following regulation issued by the Commissioner of Internal Revenue the court erred in refusing to give its tendered instruction No. 3.

Regulation 1002.13 issued September 4, 1943 (8 Federal Register, p. 12432), provides in part as follows: "Unless otherwise expressly exempted, any change in a salary rate, provided for in any agreement existing as of October 3, 1942 in the case of salaries of more than $5,000 per annum, * * * *which is to take effect at some future date or on the happening of some future event,* is subject to the provisions of the regulations in this part regardless of when the agreement was made."

Instruction No. 3 tendered by appellant is as follows: "You are instructed that if there was an agreement existing as of October 3, 1942, between the plaintiff and defendant involving the payment of more than $5,000 per year which was to take effect at some future date or upon the happening of some future event, you should find for the defendant."

The appellant refers to that part of the regulation which we have italicized and which is contained within its requested instruction.

We do not think the court erred in refusing to give the requested instruction. There was no evidence with reference to the contract entered into in June 1942, from which the jury could find that it was not to take effect until some date or the happening of some event after October 3, 1942.

With reference to this contract, which the jury by their verdict found to exist, the only evidence is that it was to take effect immediately, that is, in June 1942, and that appellee was to receive as a basis of pay the sum of $25 per unit for all units sold by the housing division.

It is true there is evidence that this agreement was not to be reduced to writing until a release was obtained from Cook, which did not occur until in May 1943, but this in no way or manner deferred the effective date thereof. Likewise the first units were not sold until after October 3, 1942, but the contract was at all times in force for there can be no question that if units had been sold prior to October 3, 1942, the appellee would have been entitled to pay.

Neither of these circumstances, that is, the delay in putting the contract in writing or the fact that no units were sold until after October 3, 1942, caused the contract, which had been entered into prior thereto, to take effect at some future date or on the happening of some future event.

We think the case was properly submitted to the jury and, on the basis of the jury's verdict, the contract was not within the purview of the Act and the regulations issued pursuant thereto. Therefore, no approval was required from the Commissioner of Internal Revenue to authorize the court to proceed with its enforcement.

For the reasons set forth herein we think the verdict of the jury and the judgment of the court entered pursuant thereto should be affirmed.

AFFIRMED.