WILLIAM J. FURSE, APPELLEE, v. L. W. LAMBERT, APPELLANT.

FILED JANUARY 5, 1910.    No. 15,885.

1. **Appeal**: PLEADING: SUFFICIENCY. Where a petition is assailed for the first time in this court it will be liberally construed, and relevant allegations in the answer thereto may be used in support of the cause of action litigated in the district court.

2. **Statute of Frauds**: SALE OF LAND: AGENCY: EVIDENCE. If a landowner in corresponding with a broker concerning a sale of the principal's real estate describes the land, the price for which it may be sold, and instructs his agent: "You may go ahead and close the deal with the man," the principal thereby satisfies the statute of frauds so as to furnish proof of the broker's agency.

3. ——: ——: CONTRACT: ORAL MODIFICATION. Where a broker has written authority to sell his principal's land, a subsequent oral modification of the price for which it is to be sold does not render the altered contract obnoxious to the statute of frauds.

4. **Specific Performance**: DISCRETION OF COURT: EVIDENCE. The specific performance of a contract for the sale of real estate rests largely in the sound legal discretion of the trial court, and, if the sufficiency of conflicting evidence to support the judgment depends on the credibility of the witnesses who appeared and testified before that court, its judgment will not ordinarily be disturbed.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Gomer Thomas, C. C. Wright* and *B. H. Dunham,* for appellant.

*John Everson* and *J. G. Thompson, contra.*

ROOT, J.

This is an action for specific performance of a contract for the sale of real estate executed by an alleged agent of defendant. Plaintiff prevailed, and defendant appeals.

1. It is argued that the petition does not state facts sufficient to constitute a cause of action. Plaintiff alleges that defendant on the 15th of December, 1907, owned the land in controversy, but resided in Iowa; that he corresponded with Myers, a real estate agent in Nebraska, "with the view of employing the said Myers to sell the land for him" by February 1, 1908, for $5,600; that Myers agreed to defendant's terms, "and entered into the employ of the defendant, by letters to defendant, which are now in his possession"; that Myers failed to sell for the price named, but received an offer of $5,000 therefor and communicated that fact over the telephone to defendant. "In said conversation the said defendant, L. W. Lambert, authorized and employed his said agent, O. H. Myers, to close said deal and sell the premises at that price"; that said agent did sell the farm to plaintiff, received part of the purchase price, and executed a contract in the name of his principal. A copy of the contract is made part of the petition. Defendant, answering, admits that he owns the land, and denies all other allegations in the petition, but alleges that by letter he authorized Myers to sell the land for $7,600, and "that the only authority the defendant gave to the said O. H. Myers to sell the land was the authority to sell the same for the amount and on the terms above stated." He repudiates the contract sued on.

No attack was made upon the petition in the district court, and a fair construction of all of the pleadings justifies an appellate court holding the pleadings sufficient, and the issue to be whether Myers had authority to sell the land for less than $7,600. We have held a verbal modification of written authority to sell real estate does not render the altered authority obnoxious to the statute of frauds. *Rank v. Garvey*, 66 Neb. 767. Coming, as the objection does, at this stage of the litigation, it should be overruled.

2. It is urged that the evidence does not sustain the judgment. The bill of exceptions discloses that defendant wrote Myers December 15, 1907, asking, among other things: "What in your judgment the quarter ($\frac{1}{4}$) lying northeast of town and owned by me could be sold for between now and the first of February." Myers immediately answered by letter that, owing to crop failure and the existing panic, land in his neighborhood could only be sold at a bargain; that defendant's farm was worth $6,000, and "I have a man who will pay you $5,600 cash for it." December 19 defendant wrote Myers, stating: "Yours of the 18th at hand this ins't, will say in reply that if I am to receive $5,600, less your commission $150, you may go ahead and close the deal with the man, but it must be clearly understood that the man must assume the mortgage of $2,000 that is against the place and accept the papers just as I hold them. They consist of a mortgage deed guaranteed by John Everson." The man referred to in Myers' letter failed to secure money to pay for the land. Myers negotiated with other individuals, and finally plaintiff offered to pay $5,000 for the farm. December 25 Myers talked over the long distance telephone with defendant. Up to this point there is no dispute as to the facts, but from thence forward there is a conflict. Myers testifies that he explained the situation fully to defendant; that he experienced no difficulty in hearing defendant's language; and that, after being advised, defendant urged the witness to go ahead, close the deal, and

make a contract before the customer changed his mind. H. C. Furse corroborates Myers concerning what was said at the Nebraska end of the telephone. Furse is Myers' partner and plaintiff's brother, and we consider those facts in weighing his testimony. Mr. Hall, who had charge of the Alma telephone exchange, heard part of the conversation. He does not remember all of the details, but testifies that the subject of the conversation was whether the farm should be sold for $5,000 or $5,600; that Myers said, "I can get you $5,000," and that Lambert responded, "Get it. Go ahead and get it." Defendant admits talking over the telephone with Myers, but says he could not understand Myers; could not make out a single sentence. Two witnesses present in defendant's house at the time testify that defendant seemed to have difficulty in understanding the telephonic message, but that he said something about a letter. Defendant's wife testifies that her husband in answering the message said he could not understand what Myers was saying, but finally said: "All right, that is all right, if it is in accordance with my letter of instructions. If the deal is all right, go ahead." Myers then prepared the contract in suit, signed defendant's name thereto, accepted a draft for $1,000 from plaintiff, and mailed the documents to defendant. Lambert did not acknowledge receipt, and Myers again telephoned defendant. On the 29th Myers wrote to defendant, and received an answer stating that the draft and contract had not yet been received, but, if the contract was in accordance with the writer's letter of instructions, he would remit for the commission. December 30, Myers wrote again, giving complete details of the transaction, and inclosed a duplicate draft for $1,000 to take the place of the original which defendant denied having received. Defendant's local attorney then wrote a letter, which defendant signed, and sent to Myers, wherein he denied Myers' authority to sell the farm for less than $7,600, and stated that Lambert would retain the duplicate draft until his letter was answered by Myers.

Defendant argues that the letters did not authorize Myers to contract in Lambert's name, and cites *Ross v. Craven*, 84 Neb. 520. In the cited case Craven, the land-owner, did not authorize Johnson, the broker, to make a contract for the sale of the former's land, whereas in the instant case Lambert wrote Myers to go ahead and close the deal. Argument is unnecessary to distinguish the cases and demonstrate that the case at bar is not ruled by the cited one.

It is further urged that general authority was not given Myers, but that he was empowered to sell to a specific individual. We do not agree with counsel. Lambert did not know the proposed purchaser, or his name, and his personality could not have entered into the principal's granting or withholding authority to his agent. The letters demonstrate Lambert's anxiety to sell before February 1, 1908. His subsequent conduct and his pleading indicate clearly that he did not construe Myers' agency as his counsel now urge it should be interpreted. Under the circumstances of this case, we think that, in so far as Myers had power to sell the land, his authority was general as to the person to whom it might be sold.

Finally, defendant contends that, viewed in the most favorable light for plaintiff, the evidence must leave the court in doubt as to whether or not Lambert understood Myers' statement over the telephone and authorized a diminution in the price for which his land might be sold. *Stanton v. Driffkorn*, 83 Neb. 36, is cited by defendant upon this subject. This objection, to our minds, presents the only serious question in the case. The evidence is clear and satisfactory that Myers, on Christmas of 1908, told defendant the facts over the telephone. If we credit Myers and Hall, defendant understood that the land could be sold for $5,000, but for no greater sum, and with that knowledge he directed Myers to "close the deal at once so that this fellow wouldn't get away." The only way the deal could be closed would be to perform some act or acts to satisfy the statute of frauds, and this was done.

Defendant's conduct has not been frank or convincing. From his letters and other evidence appearing in the bill of exceptions, we are satisfied that he did not expect in the first instance to receive more than $5,600 for the farm, yet he retained the duplicate draft about a month, and informed individuals that he had been advised by his attorney that he could hold plaintiff for $7,600. Lambert testifies that, although he is willing to abide by the court's construction of his letter to Myers, he did not authorize his farm to be sold for less than $7,600. Lambert's testimony that he did not hear what Myers said over the telephone is contradicted by his wife. There are other facts and circumstances tending strongly to discredit Mr. Lambert. The evidence does not show that the farm was worth more in December, 1907, than plaintiff agreed to pay therefor, nor is there a scintilla of evidence indicating bad faith on his part.

Upon a consideration of the entire record, the district court was justified in finding that Myers had authority to make the contract in suit, and that through him the minds of the parties did meet with a common intention with respect thereto. Whether a contract shall be specifically enforced rests largely in the sound judicial discretion of the trial court. The record presents little for consideration other than the credibility of witnesses who appeared and gave their testimony in open court. The trial court was in much better situation than we are to know which of those witnesses were telling the truth, and we are not convinced that error was committed in finding for the plaintiff.

We have not made specific mention of all the arguments presented by defendant. They have been considered, but are not believed to be important in settling the rights of the parties hereto.

The judgment of the district court is

AFFIRMED.