PETTY *v.* GACKING.

Opinion delivered January 9, 1911.

1. EQUITY—TREATING THAT AS DONE WHICH OUGHT TO BE DONE.—Where a note was negotiated upon the strength of a promise by one of the defendants to sign it, equity will treat that as done which should have been done, and will hold such defendant liable as a joint maker though he did not in fact sign the note. (Page 219.)

2. BANKS AND BANKING—LIABILITY OF BANK.—Where a bank officer, being requested by plaintiff to pay plaintiff's money to one of the defendants upon his presenting a note signed by himself and indorsed by another defendant, made the payment on presentation of a note signed by one of the defendants with a communication from the other stating that he would sign the note, neither the bank nor the officer was liable, as plaintiff's instructions were substantially carried out. (Page 221.)

Appeal from Sebastian Chancery Court; *J. V. Bourland,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This is an action brought by appellee, Henry Gacking, against E. B. Petty, John Shaw, American National Bank and P. A. Ball for the purpose of recovering judgment for an amount of money loaned by Gacking to Shaw and Petty. The facts, briefly stated, are as follows:

During and prior to 1902 Gacking was a customer of the American National Bank, and had been in the habit of calling upon his friend, P. A. Ball, the cashier of that bank, to attend to many of his little business matters. The bank was furnishing Gacking with a box in its safety deposit vault free of rent, and Ball had to some extent looked after a few of Gacking's financial affairs, acting merely as his friend and receiving no compensation therefor. During the year 1901 Gacking loaned to Shaw and Petty $125, and took their joint note for that amount. In November, 1902, Shaw desired to increase the amount of this loan to $250, and requested Gacking to loan him $125 more, which amount would be added to the old note of $125, making the total $250, for which amount Shaw and Petty would give their new note to Gacking.

Gacking called Mr. Ball on the 'phone and asked him if Petty was good for $250. Mr. Ball responded that he was, and

Gacking then notified Ball to let Shaw have $125 of his money and surrender to Shaw the old Petty and Shaw note when Shaw brought to the bank a new note for $250 signed by Shaw and indorsed by Petty.

Some time later during the same day Shaw came to the bank and presented to Mr. Ball the following writing:

"Mr. P. A. Ball: I will sign Mr. John Shaw's note for $250 all right. 11-19-1902. [Signed] E. B. Petty."

In accordance with instructions, Mr. Ball then made out a note to Gacking for $250, which was signed by Shaw and the above agreement of Petty to sign the note was attached to the note itself and Shaw given $125 of Gacking's money. At the time Shaw brought the above writing to the bank he told Mr. Ball that Petty was engaged in work, and would come to the bank later in the day, or within a short time thereafter, and sign the note. A few days later Gacking came to the bank, and Mr. Ball advised him what had been done, showed him the note signed by Shaw with Petty's agreement attached thereto, and told Gacking it would be advisable to have this note actually signed by Petty, but that his agreement to sign the note was binding and would hold him, but for business purposes the note should be signed by Petty. Gacking agreed to have this attended to, took the note, placed it in his safety vault and had exclusive control over the note from that time to the present. Petty never signed the note. After the maturity of the note the interest was paid on it by Shaw to maturity, and indulgence was granted at Shaw's request, but for no fixed period. On the 12th of March, 1906, Shaw paid $20 on the interest then due on the note. The above are substantially the facts as they were found by the court.

The court found that the bank and Ball "had not been guilty of any negligence resulting in damage to Gacking."

The decree was a dismissal of the complaint as to the bank and Ball, and a judgment in favor of appellee against appellant Petty in the sum of $250, with interest, etc.

*Edwin Hiner,* for appellant.

1. If appellee had a cause of action against Shaw, on the note sued on against appellant on the offer to guaranty alleged to have been signed by, the remedy at law was complete and

adequate, and the court erred in refusing to transfer the case to the law court.

2. If the writing signed by Petty was an offer to guaranty, notice of acceptance of such guaranty should have been given and alleged in the complaint. Not being alleged, the demurrer should have been sustained. 22 Ark. 540; 78 Mo. App. 670; 73 Mo. 361; 93 Mo. App. 237, 241. Appellant was entitled also to notice of the nonpayment of the Shaw note at maturity. Such notice not having been given, appellant should have been exonerated. 22 Ark. 540, 543; 4 Ark. 84. See also 6 Ark. 142.

3. An agreement upon a valid consideration by the holder of a note to extend the time of payment, without the consent of the surety, will discharge the surety. 54 Ark. 97.

*Winchester & Martin,* for appellee.

1. The agreement signed by Petty was an original undertaking. He is bound as maker of the note. 77 Ark. 53; 40 Ark. 545; 12 Ark. 219; 64 Ark. 470; 68 Ark. 423; 95 U. S. 95.

There is no escaping the fact that his note was intended to enable Shaw to get the money and the other note upon which Petty was bound, and that it produced the results intended. Daniel on Neg. Instruments (5 ed.), § § 550, 551, 559, 561; 2 Wheat. 66. Equity regards that as done which should have been done. 92 Ark. 66; 77 Ark. 107. Here Petty intended to give credit to another, and is bound by principles of moral rectitude and good faith to fulfill the expectations thus raised. 3 Cranch 492; 70 Cal. 386. See also 16 Cyc. 134; 79 Ark. 52.

2. Under the facts and circumstances of this case the court of chancery is the proper forum, and appellee would not have a complete and adequate remedy at law. 1 Story's Eq. 96; 9 Ark. 503, 504; 32 Ark. 489.

WOOD, J., (after stating the facts). The chancery court had jurisdiction. The facts were set forth in detail in the complaint, and the prayer was "for such other relief, general and special, against all of said defendants or either of them, or against them jointly or severally, as the facts may justify and as to the court may seem fit."

Petty had not in fact signed the note, though the evidence clearly shows that he intended to sign it. His communication

to Ball saying: "I will sign John Shaw's note for $250 all right" shows beyond controversy that he intended to sign the note. Ball, acting for Gacking, upon the faith of this communication turned over to Shaw the sum of $125, and Shaw and Petty also obtained a note for $125 which had been previously executed to Gacking. The note was obviously surrendered upon the theory that the subsequent note for $250 signed by Shaw, and which Petty promised to sign, covered the amount of the prior note. There was therefore a valuable consideration for the note sued on, and the communication or written promise of Petty to sign the note should be treated in equity as a part of the note. The court properly considered the case, under the facts, as if it were a suit to reform the note so as to make it the note of Petty as well as of Shaw who had actually signed it. A court of equity, having all the parties before it, could mold the remedy to conform to the rights of the party entitled to relief. Equity "varies its adjustments and proportions so as to meet the very form and pressure of each particular case in all its complex habitudes." *Black* v. *Bowman,* 9 Ark. 501, 503, 504.

Petty wrote the communication to Ball for the purpose of giving Shaw, the maker of the note, credit with the payee, whoever he might be. It was the same in legal effect as if Petty had signed the note jointly with Shaw, or as if Petty at the time the note was executed by Shaw had put his name in blank upon the back of the note.

Treating that as done which should have been done, Petty must be considered as the joint maker of the note and not as a mere guarantor. *Heise* v. *Bumpass,* 40 Ark. 545. See also *Lake* v. *Little Rock Trust Co.,* 77 Ark. 53; *Scanland* v. *Parker,* 64 Ark. 470; *Braddock* v. *Wertheimer,* 68 Ark. 423; *Good* v. *Martin,* 95 U. S. 95.

It is only by looking at the intent, rather than at the form, says Mr. Pomeroy, "that equity is able to treat that as done which in good conscience ought to be done." The maxim has been applied in innumerable instances to work out justice, and the facts of this record call for its application again. See *Spaulding Mfg. Co.* v. *Godbold,* 92 Ark. 66, and other cases cited in appellee's brief. The note was kept alive by payments of interest after maturity, and the statute of limitations does not ap-

ply. Treating appellant as a joint maker of the note, as he should be, the less said about laches the better for appellant.

Neither Ball nor the bank is liable, for Ball was only acting at the request of appellee without compensation, and practically carried out his instructions and obtained for him what he desired, namely, an instrument that rendered Shaw and Petty liable for the money loaned them by appellee.

The decree is in all respects correct. Affirm.