STATE, EX REL. SORENSEN, ATTORNEY GENERAL, V. FARM-
ERS & MERCHANTS BANK OF DESHLER, E. H. LUIKART,
RECEIVER, APPELLEE: HENRY F. BEHRING,
INTERVENER, APPELLANT.

FILED JANUARY 19, 1934. No. 28736.

P. I. Harrison and W. T. Thompson, for appellant.

F. C. Radke, Barlow Nye and Sloans, Keenan & Corbitt, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

GOSS, C. J.

Intervener appeals from a judgment refusing his claim as a trust fund against the assets of the bank.

In November, 1931, Farmers & Merchants Bank of Deshler was in financial trouble. Some of its officers called a meeting of officers and citizens on the night of

November 10, 1931, and offered a plan of reorganization. On that occasion Henry F. Behring was present. The plan proposed by the officers was put in writing in the form of subscriptions to $25,000 worth of new stock in the bank for the purpose of reorganization. It provided that the old stockholders should surrender and cancel their old stock and would take out $45,000 in notes covering the old stock and part of the surplus account. It was further understood that, unless the full amount of $25,000 should be subscribed, the subscriptions would be canceled. All of these points of agreement appear in evidence in the writing signed on that date by nineteen persons, each subscribing for $1,000 of the proposed new capital stock. Several were officers of the bank. Mr. Behring was the last to sign. Ultimately the plan failed, probably because no more subscriptions could be secured, and on December 31, 1931, the district court declared the bank insolvent. Later E. H. Luikart was appointed receiver and proceeded to wind up the affairs of the bank.

In the meantime, expecting enough subscriptions would be obtained, Mr. Behring arranged to borrow his subscribed amount from Alma Wulf of Denver, and so informed the officers of the bank. Miss Wulf sent a check for $1,000 directly to the bank. The bank officers at once deposited it to the credit of Behring's account on December 1, 1931, without any instructions from Behring. The transaction was effected by the officer writing a single deposit slip for the amount. From this slip it was posted in the ledger account of the customer. Behring went to the bank on the same day and was informed that the bank had received the money. The officer who handled the matter testified he and the officers knew the money was for the stock subscription; that Behring did not instruct him to put it in his checking account but that the officer did that on his own initiative. Behring never had a statement of his account from the bank showing that this money was deposited to the credit of his checking account, until after the bank was closed. In December,

1931, he made four deposits and drew 19 checks, but at no time did his drawings disturb the $1,000 credited on the books of the bank to his ledger account. When the bank closed it had sufficient cash assets to pay this claim. This item had augmented the assets of the bank.

It is clearly shown by the evidence that it was the intent of both bank and customer that the particular money should be used, if at all, only to carry out the terms of the subscription agreement. It was to be used to recapitalize the bank, if it should be reorganized, and for no other purpose. Both Behring and the bank kept the faith. As between the parties, at least, it could not be appropriated lawfully until the proposed $25,000 had been subscribed. That event never occurred.

But the receiver, acting in the interests of depositors and other creditors, denied the claim as a trust fund and classified it as an ordinary claim for a deposit. The question is, which position the rules of law support under the uncontradicted facts.

The bank assumed to act as the agent for Behring when, without directions, it took the check sent to it by Miss Wulf and on its own initiative deposited it in Behring's account to await the reorganization of the bank upon the fulfilment of the terms of the subscription contract. It may be said to the credit of the officers of the bank that the evidence indicates they still respect this fund as intended for the special purpose for which it was received and held.

The ruling principle is that expressed in the recent case of *State v. Bank of Otoe, ante,* p. 530, decided November 16, 1933. The second paragraph of the syllabus says: "A bank becomes agent of depositor and holds deposit as a trust fund when, with knowledge of the fact, it accepts a deposit made for the purpose of paying a specific claim." In the text it is said: "We think that the rule, as it exists here and in most of the states, is that a deposit made for a specific purpose, as for the payment of a particularly designated claim, partakes of the nature

of a special deposit and is in a distinct class by itself. When a deposit is so made in a bank, it acts as the agent of the depositor, and if it fails to apply the deposit as directed, or should misapply it, the deposit may be recovered as a trust fund. 7 C. J. 631, 632; *Hudspeth v. Union Trust & Savings Bank,* 196 Ia. 706, 31 A. L. R. 466, and annotation to said case appearing at page 472 *et seq."* We refrain from quoting further from that opinion, the argument in which establishes that the fund there was a trust fund. We think the principle applies with equal force to the case under consideration.

Under the facts disclosed by the record and under the controlling authorities, we hold that, when Mr. Behring's money was left with the bank and was accepted by the bank for the known purpose of paying his subscription to the capital stock of the reorganized bank when the conditions of the subscription agreement were met, the bank held the fund as trustee. Its agency was not terminated by depositing the money to his credit in the circumstances shown. The bank having failed before the conditions of reorganization became effective, the receiver obtained no better right or title to the fund than the bank had. It was not divested of its trust character and should have been allowed as a trust fund.

The judgment of the district court is reversed, with directions to allow intervener's claim as a trust fund.

REVERSED.