ELMER E. THENO, APPELLANT, V. NATIONAL ASSURANCE CORPORATION, APPELLEE.

276 N. W. 375

FILED DECEMBER 10, 1937. No. 30107.

*Frederick J. Patz* and *Edward C. Fisher,* for appellant.

*Flansburg, Lee & Sheldahl, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

PAINE, J.

An action at law was brought by an agent to recover commissions he claimed due from defendant company for selling policies under two separate oral contracts of agency.

The claim for commissions to be collected after plaintiff left the employ of the company is flatly denied by defendant, which sets up in its answer a written settlement agreement, which definitely settles all past or future claims between the parties. At the close of all the evidence a verdict was directed for defendant.

Plaintiff sought to introduce evidence of mistake, accident, and fraud in such written settlement, and claimed that it was not intended by either party to cover renewal commissions. The court sustained objections and refused to admit some of such evidence.

The defendant's motion for a directed verdict charged that the written settlement agreement was complete on its face and covered all claims of plaintiff, and for the further reason that plaintiff's allegations of fraud with reference to the settlement agreement were not supported by any evidence, and that plaintiff had received $500 for the purchase of his stock, according to the terms of such settlement, and had received about the same amount in payments upon other items in such settlement contract, and that, as he had retained all of such payments received under the settlement agreement, he had thereby ratified it.

The errors relied upon for reversal allege fraud, accident, mistake, and concealment in the making of the final settlement contract between the parties, and that the court erred in refusing to allow testimony to vary the terms of the instrument.

It appears from the bill of exceptions that exhibit No. 9 is the final settlement agreement, made December 9, 1935, between the plaintiff and defendant. Such agreement provides, first, for the purchase of 20 shares of stock held by the plaintiff in the defendant company, for which the defendant agrees to pay the sum of $500. The third paragraph provides that the defendant is to pay to the plaintiff commissions of 66 2/3 per cent. on over 40 policies listed in exhibit A, attached thereto, when such premiums are paid. The fourth paragraph provides that, if the plaintiff reinstates any of the lapsed policies therein listed, he

will be paid 66 2/3 per cent. of the first year's premiums. The fifth and final paragraph provides as follows: "In consideration of the foregoing, the first and second parties mutually agree that the second party accepts the resignation of the first party, and that the first and second parties hereby release and discharge any and all claims that they now have or may have against each other, except the commissions that may become due the first party under paragraphs three and four of this agreement, which commissions shall be paid by the second party when and as they become due thereunder."

The evidence disclosed that the plaintiff had worked for the defendant some five years, beginning in October, 1928, at the end of which time he claimed they owed him certain renewal commissions. He reentered their employment under a second oral contract to take charge of a department for the sale of thrift contracts, but after discussion it was decided to get away from the word "thrift" and call them endowment savings contracts, and after a discussion of the matter from December, 1933, to March, 1934, the plaintiff again actively entered the employment of the defendant.

The plaintiff claims that in March, 1934, W. L. Harlan promised him if he would come back to work they would put him in full and complete charge of the endowment savings department, and would give him $8 out of the first $12 paid by the purchaser and a 5 per cent. renewal for a nine-year period thereafter, which renewals would be vested and nonforfeitable, and if agents under him sold these thrift units plaintiff was to receive $1 on the first year's payments as an overwriting commission, and he was to receive, according to his testimony, 5 per cent. renewal on all such endowment savings contracts after the first year, no matter who sold them.

During 1935 many disputes arose, and finally the plaintiff decided to leave the company, and the final settlement contract of December 9, 1935, was drawn. L. L. Waters, secretary-treasurer of defendant, testified as to a conver-

sation in which the plaintiff said: "Now that I have definitely made up my mind I am going to leave I want to have a positive understanding of just exactly what my status is and the company's status is after I leave." And, further: "He suggested that it be reduced to writing so that we would both of us understand and we would agree exactly the basis on which he terminated his employment. I asked him what he wanted included in that agreement and he said, 'I want you to buy the stock I own in the company. I want you to buy that and pay me $500 for it.'"

The plaintiff would not sign this agreement until he had taken it out to Mr. Harlan's home, where he was sick, and talked it over with his friend Mr. Harlan, and he came back and said that, if they would insert in the settlement contract that the company would release him from any claims of any kind which the company might have against him, as he was releasing it, he would sign it. After this provision demanded by the plaintiff was inserted, the contract was drawn and signed by the parties as an entire settlement of all the transactions of every kind and nature between the parties.

In rebuttal the plaintiff sought to introduce evidence in support of the allegations of mistake, accident, and fraud contained in his reply seeking to show that by mistake exhibit 9 was so drawn as to apparently include all claims of every nature, when in fact it was not intended by either party to cover renewal commissions.

The briefs and the argument by counsel in this case present to us nearly every phase of the parol evidence rule, which comes to us from the English common law, and which was clearly announced in *Sylvester v. Carpenter Paper Co.*, 55 Neb. 621, 75 N. W. 1092: "Where negotiations take place between parties which result in their reaching an agreement in reference to the subject-matter of the negotiations, and the parties subsequently reduce their agreement to writing, sign and deliver the same, then, in the absence of fraud or mistake or an ambiguity in the writing, it constitutes the best and the only competent

evidence of the contract originally made." See 10 R. C. L. 1016, sec. 208; 22 C. J. 1070. It has been held that, if the written agreement is incomplete upon its face, parol evidence not in conflict therewith is admissible to supply such deficiency. *National Engraving Co. v. Queen City Laundry*, 92 Neb. 402, 138 N. W. 575. However, it is not shown to have been incomplete. Another recognized exception to the parol evidence rule is that evidence tending to establish a second oral agreement between the parties is admissible as to matters upon which such contract is silent if such oral agreement does not tend to vary or contradict the terms of the written instrument. *Huffman v. Ellis*, 64 Neb. 623, 90 N. W. 552; *Providence Jewelry Co. v. Gray Mercantile Co.*, 92 Neb. 633, 139 N. W. 215. But, in the case at bar, it was clear to the trial court that the evidence would vary and add to the terms of exhibit No. 9.

In *Security Savings Bank v. Rhodes*, 107 Neb. 223, 185 N. W. 421, 20 A. L. R. 412, Nebraska authorities were analyzed, and three were overruled, and it was held that a contemporaneous oral agreement, providing that the contract was not to be performed if a certain contingency occurred, could not be shown, as it would have the effect of adding to, varying, or contradicting the express terms contained in the writing, as it would in the case at bar. See *Spiegal & Son v. Alpirn*, 107 Neb. 233, 185 N. W. 415.

When the contract, exhibit No. 9, positively stated that plaintiff released defendant of all claims that he now has, or may have (in the future), against defendant, he cannot now be heard in an attempt to show an oral agreement which would render such words of release meaningless. *Erwin v. Kuhlman*, 130 Neb. 249, 264 N. W. 676.

It is alleged there was fraud in the written contract. Fraud, if proved, would strike down the written contract as a whole. *Paper v. Galbreth*, 121 Neb. 454, 237 N. W. 582. But the plaintiff does not desire to do that, but simply desires to add additional provisions to it.

It is a general rule that fraud must relate to a present or preexisting fact, and cannot ordinarily be predicated

on unfulfilled promises, or statements as to future events. See *Palmetto Bank & Trust Co. v. Grimsley,* 134 S. Car. 493, 133 S. E. 437, 51 A. L. R. 42, and notes.

In the case at bar, some bits of evidence of the alleged oral contract may have found their way, without objection, into this large bill of exceptions, but this would not preclude the trial court from disregarding such testimony in sustaining a motion for a directed verdict. *Bushnell v. Elkins,* 34 Wyo. 495, 245 Pac. 304, 51 A. L. R. 13.

At the close of the 50-page monograph, entitled "Parol Evidence Rule in Nebraska," found in 4 Neb. Law Bulletin, 115, will be found an appendix, giving a four-page synopsis of Nebraska cases in which the rule has been enforced, and an examination of this list will convince any one that it is scarcely true that Nebraska decisions usually find some exception, and allow evidence to be introduced of alleged accident, fraud, or mistake to modify or vary the terms of a written instrument.

In Thayer's Treatise on Evidence at the Common Law, he devotes all of chapter 10 to the parol evidence rule, and begins with the statement: "Few things are darker than this, or fuller of subtle difficulties." He shows that some of the reasons which make it the most difficult branch of the law of evidence are that most of the questions are out of place, that there is a grouping of incongruous matter, and then it is looked at in the wrong focus; that the indiscriminate use of the phrase "parol evidence" has always been one of the sources of confusion. He cites the case of *Collins v. Blantern* (1767) 2 Wils. (Eng.) 341, in which an exception to the rule was first distinctly held, to the effect that an illegality of consideration not appearing on the face of the bond was a good defense; then concludes that there is in reality only one actual rule of evidence included in the entire compass of the so-called parol evidence rule.

Wigmore says that several circumstances should be mentioned in reference to the rule: That the parol evidence rule is in no sense a rule of evidence, but a rule of sub-

stantive law; the rule declares that certain kinds of fact are legally ineffective in substantive law, and forbids the fact to be proved at all, and that the matter excluded is not always strictly parol evidence, so this term "parol" is somewhat misleading. 5 Wigmore, Evidence (2d ed.) 235, sec. 2400.

In our opinion, the grounds set out in Nebraska cases cited by the plaintiff for allowing the introduction of parol evidence do not exist in the case at bar. The final written settlement was demanded by the plaintiff for the express purpose of settling once and for all the unhappy disputes which had been continually taking place. Upon his demand this final settlement agreement was drawn. Exhibits were attached thereto, showing exactly what policies could be reinstated by him, or premiums collected, which would entitle him to additional compensation. After the contract had been drafted to the entire satisfaction of the defendant, then the plaintiff requested the opportunity of taking the contract to a friend in whom he had entire confidence, and at the conclusion of their careful examination he came back to the defendant and demanded but one change in the written contract, viz., that, as he released the defendant from all liability, it should insert a statement to the same effect, and provide also that he be released from all liability, and this change, when inserted in the contract, met all of his demands. While it may be admitted that plaintiff in his brief has pointed out that there are many exceptions to the parol evidence rule as found in our decisions, this court has reached the same conclusion that the trial court did, and finds that the final written agreement was definite, complete, unambiguous, and conclusive between the parties; and, finding no error in the record, the judgment of the trial court is hereby

AFFIRMED.

CARTER, J., concurs in the result.

DAY, J., dissents.