ORIS GLASS, DOING BUSINESS AS GLASS LAND COMPANY, APPELLANT, v. NEBRASKA STATE BANK, A CORPORATION, APPELLEE.

122 N. W. 2d 882

Filed July 26, 1963. No. 35401.

Mark J. Ryan, Theodore J. Donley, and Harold Dwyer, for appellant.

Leamer & Graham and Don A. Fitch, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

This is an action by the plaintiff against the defendant bank for the recovery of $4,238.82, part of the bank deposit made in the defendant bank by the plaintiff. After trial, the court entered judgment for the defendant bank and the plaintiff appeals. The sole question involved in this case is whether the bank was legally authorized to debit the plaintiff's account with two checks. The two checks were drawn by another party, Francis L. Sherlock, against his own account and in which account there were insufficient funds to pay said checks in the amounts of $2,184.59 and $2,054.23. The question may be otherwise stated generally as to whether the deposit

of the plaintiff in the defendant bank was a general deposit or whether it was a deposit for the special purpose of paying these two checks and to be considered as a trust deposit.

From an examination of the evidence in this case, the following facts appear: On August 18, 1960, the plaintiff opened an account with the defendant Nebraska State Bank in the name of Glass Land Company by Oris Glass, a trade name under which the plaintiff did business. This account was opened by the deposit of a check in the sum of $4,500 executed by Eugene Russell, president of The Paddock, Inc. It was payable to Francis L. Sherlock and Glass Land Company and bore a notation in the lower left-hand corner, "Escrow account on Sherlock Farm & Bar." This check was unrestrictedly endorsed by the payee, Francis L. Sherlock, and delivered to the plaintiff. There is dispute in the evidence, which will be discussed later, as to what happened on August 17, 1960, in an alleged conversation between Russell, the plaintiff, and the bank teller, James G. Melvin. On August 18, 1960, the plaintiff came to the bank to make a deposit of the check, and the transaction was handled on behalf of the bank by James G. Melvin, a teller. This transaction was in the customary form in making a general deposit. Melvin made out a deposit slip which was introduced in evidence as exhibit 1. This deposit slip was in the usual form without any special notations. At the same time, the plaintiff was also given an account number in the usual form for a general account in the bank. A signature card was completed and executed. The signature card is on a printed form and captioned, "Signature Card," and immediately beneath this appears the notation, "A - Checking Account - Individual." Following the filling in of the name of the depositor, this signature card contains a number of detailed printed stipulations and agreements to which the depositor agrees by making a deposit. The details of these recitals on the signature card are not

pertinent here except to demonstrate the nature of the instrument and the intentions of the parties in making it. Beneath the printed stipulation or agreement appear the words, "Authorized Signature," followed by the handwritten words, "Glass Land Co. By Oris Glass." The rest of this signature card contains the address and the date of August 18, 1960.

On the following day, August 19, 1960, two checks drawn by Francis L. Sherlock against his own individual account, one in the sum of $2,184.59 and the other in the sum of $2,054.23, were debited by Melvin, a teller, against the account of the plaintiff and transferred to the Sherlock account. There were insufficient funds in the Sherlock account to pay the checks. It is undisputed that there was no written check or written authorization for this debiting or for a transfer transaction. Both of the Sherlock checks referred to above were in the bank in the usual course of business on the morning of August 18, 1960, and were there before the plaintiff's account was opened on that same date. Sherlock is not a party to the case; and he was not called nor did he testify at all.

We go now to the defendant's evidence. It is all oral in nature and consists of an attempt to show that the deposit made by Glass was for a special purpose, that the money deposited was for a trust deposit, and that the bank was authorized and directed to debit the money in the plaintiff's account to the Sherlock account. Sherlock did not testify, but it is undisputed that there were insufficient funds in Sherlock's account to cover the two checks written by him. The defendant's testimony, in substance, is that on the afternoon before the deposit was made, August 17, 1960, an oral conversation was had between Eugene Russell, the maker of the deposited check, the plaintiff, and Melvin. Melvin, the teller, testified that Glass and Russell asked him if there was some way they could open up an escrow account to take care of the checks of Francis L. Sherlock. He

testified that after informing them that the opening of such an account was possible, the plaintiff and Russell told him that they would make a deposit for that purpose. Russell, Sherlock, and the plaintiff had been engaged in a transaction involving the sale of real estate, the details of which are not pertinent here except that the sale and the transaction contemplated by the parties was never consummated. Melvin testified that the plaintiff left his telephone number with him with instructions that as soon as checks from Sherlock came into the bank that he was to notify the plaintiff. Melvin then testified, in substance, that after August 18, 1960, he telephoned the plaintiff and received oral authorization from him to transfer money from the new account that had been opened on August 18, 1960, to cover the checks of Sherlock. Melvin transferred from Glass' account to Sherlock's account an amount sufficient to cover the two insufficient fund checks of Sherlock. Glass categorically denies all of this testimony, and testified that he was not even in the bank on August 17, 1960, the date of the claimed oral conversation establishing the special deposit. He further denies having had any telephone or oral conversation with Melvin subsequent to the deposit.

The evidence here shows that this was a general deposit. The presumption is that a deposit is general and not special. When Glass deposited the money, as between Glass and the bank, it ceased to be the money of the depositor and became the money of the bank to which the depositor became a creditor of the bank to the extent thereof. Nichols v. State, 46 Neb. 715, 65 N. W. 774; Board of County Commissioners of Seward County v. Cattle, 14 Neb. 144, 15 N. W. 337; State ex rel. Davis v. Farmers & Merchants Bank, 114 Neb. 378, 207 N. W. 666. In this case, what was the nature of the contract of deposit between the plaintiff and the bank? A bank is authorized to pay only to the person designated according to the terms of the contract. A bank,

in paying out the funds from a general deposit, must comply with its agreement with the depositor. The signature upon which a depositor is to be bound and the bank is to be authorized to disburse the money in a general deposit and charge his account therefor may be whatever authorization that the bank and the depositor agree upon. Federal Land Bank of Omaha v. Omaha National Bank, 118 Neb. 489, 225, N. W. 471; 7 Am. Jur., Banks, § 506, p. 360. A deposit slip, signed by the plaintiff depositor, acceptance of the check, issuance of a signature card, and the signature by the plaintiff depositor to the signature card specifying only one authorized signature for withdrawal, issuance of the general account card, and crediting on the bank books of the deposit generally clearly constituted a written agreement and contract between the bank and the plaintiff depositor not susceptible to any misinterpretation, ambiguity, or indefiniteness. That it expressed the intention of the parties with relation to the nature of the deposit, outside of the presumption applicable, there could be little question under the evidence here presented.

Despite the complete and unambigous terms of this transaction and the reduction of the agreements with reference to the deposit in a clearly understandable form used in the usual course of business, the defendant contends that this deposit was for a special purpose. It introduced evidence, to which there was objection, to show that the real nature of the deposit was for a special purpose and that prior to and contemporaneous with the actual transaction made, there was an agreement that this money was to be deposited and used only for the purpose of paying the Sherlock checks. We think applicable here are the following pronouncements that we have made with reference to the introduction of parol evidence to vary, to alter, or to contradict by prior or contemporaneous oral testimony the terms of a written contract or transaction. In Theno v. National

Assurance Corp., 133 Neb. 618, 276 N. W. 375, we said: "The parol evidence rule is not merely one of evidence, but is a rule of substantive law, which declares that certain kinds of facts are legally ineffective, and forbids such facts to be proved at all."

In Master Laboratories, Inc. v. Chesnut, 157 Neb. 317, 59 N. W. 2d 571, we stated as follows: "The correct rule is set out in Telluride Power Transmission Company v. Crane Company, 208 Ill. 218, 70 N. E. 319, as follows: 'The rule is, that when the writings show, upon inspection, a complete legal obligation, without any uncertainty or ambiguity as to the object and extent of the engagement, it is conclusively presumed that the whole agreement of the parties was included in the writings. The fact that a point has been omitted which might have been embodied therein will not open the door to the admission of parol evidence in that regard. * * * The rule is too well recognized to require citation of authorities that all preliminary negotiations, whether oral or written, are merged in the written contract.' "

We conclude, and it seems obvious, that there was neither ambiguity nor omission within the meaning of the foregoing rules as applied to the writings and the written evidences thereof in this general deposit transaction. The undisputed writings in evidence in this case not only declare the nature of the deposit and the terms and the agreements with respect to withdrawal, but it is clear that they comport and comply with the very conditions imposed and required by the bank itself to open a general deposit account. The bank, by the terms of the declaration and the agreement entered into itself, agreed to be bound by and agreed to honor withdrawals only upon the signature of that person who signed the signature card. Contemporaneous or prior oral agreements to the contrary would be inconsistent with and would deny the very thing that the parties here themselves did. At the time Melvin opened the account for Glass, the Sherlock checks which he sub-

sequently paid out of this account, had already been received and were in the bank. Despite this, and it is significant, Melvin made no notation on the various instruments involved, nor any requirement for authorization from Glass to pay the Sherlock checks at the time that he opened this general deposit for Glass. That the bank itself recognized that no withdrawals could be made except according to the terms of the express written agreement is expressed by the following testimony of Melvin on cross-examination. Referring to the conversations at the time of the opening of the account, the following questions and answers were given: "Q Wasn't his (Glass') statement to you that if any checks were to be charged there he was to come in personally and make the transfer himself, isn't that right? A To the best of my knowledge, yes." Redirect examination by Mr. Leamer: "Q Did you fully hear that question and that is your answer? * * * A Yes."

The defendant's theory is that the sum deposited here was a deposit for a special purpose and that when a person makes a deposit for a specific purpose it constitutes a trust deposit and must be treated by the bank as such. The defendant concedes that the burden of proving that a trust deposit existed rests upon the defendant and in order to meet such a test, it must be made by clear and satisfactory evidence. The general rule is well stated in 7 Am. Jur., Banks, § 419, p. 294, as follows: "* * * the burden devolves on the party who claims that the deposit is a special one to show that it was received by the bank with the express or clearly implied agreement that it should be kept separate from the general funds of the bank and that it should remain intact." (See note 13 citing approximately 22 cases.) See, also, Annotations, 86 A. L. R. 375, 16 L. R. A. 516; Ann. Cas. 1913E 45. Two Nebraska cases are cited by the defendant in support of its position. They are State ex rel. Sorensen v. Bank of Otoe, 125 Neb. 530, 251 N. W. 111; State ex rel. Sorensen v. Farmers & Merchants

Bank of Deshler, 125 Neb. 800, 252 N. W. 316. Neither of these cases supports the defendant's proposition as applied to the facts in this case. These cases arose between the depositor and the receiver of an insolvent bank and the question under the particular circumstances was whether the deposit was a trust deposit, which the bank was required to separate out and keep separate from the general funds of the bank. In neither case was the question raised as to whether the bank could transfer funds from one depositor's account to another without a written signature or authorization by the depositor. We have examined the cases from other jurisdictions cited by the defendant to sustain its position in this case that this was a trust deposit. None of them are applicable to the situation present in this case. There is much testimony in the record as to the nature, the liabilities of, and the agreements between Sherlock, the witness Russell who wrote the check that was deposited, and Glass concerning arrangements that either were made or were disputed as to a real estate transaction and a contract for sale of a farm and a bar. It is significant that Sherlock did not testify in connection with this transaction at all. Russell testified that he gave the check to Glass when in fact it constituted a loan to Sherlock. There is no testimony, even from Sherlock, to confirm this. This testimony is inconsistent with the express memoranda that Russell placed on his check denominating it as relating to an escrow account. By maximum reach, it appears that the defendant bank through Melvin came to the conclusion that Glass was holding the funds deposited as trust funds as between the parties. The evidence in this respect falls far short of a clear and convincing nature in order to establish such a trust relationship. But, in any event, even assuming that Glass was a trustee as between the parties, it would not affect the transaction and issue in this case. The general rule is that a bank which receives a general deposit of money becomes the debtor of the depositor and

impliedly contracts to honor his checks up to the sum deposited. It seems beyond doubt that if a bank essays or attempts to pass upon the rights of an adverse claimant to the fund deposited, and pays it over to him, or any part thereof, it becomes responsible for the amount so paid to the depositor. 7 Am. Jur., Banks, § 413, p. 289, notes 18 and 19.

This follows the general rule that a fiduciary or trustee may, as a general rule, deposit trust funds in a bank as a general deposit, and with full knowledge of the bank, and the fact that the funds so deposited are trust funds does not destroy the character of the deposit as being a general one, subject to the withdrawal of the trustee depositor, and does not make the deposit a special one. 7 Am. Jur., Banks, § 421, p. 295; Annotation, 53 A. L. R. 564.

Under the evidence in this case and the law applicable thereto, the judgment is hereby reversed and the cause remanded to the district court with directions to render judgment for the plaintiff in the sum of $4,238.82 together with interest.

REVERSED AND REMANDED WITH DIRECTIONS.

SPENCER, J., dissenting. BOSLAUGH and BROWER, JJ., concurring in this dissent.

I am unable to agree with the majority opinion. I find no fault with the conclusion that the deposit involved was a general deposit and that its terms could not be modified by a contemporaneous oral agreement not embraced in the written contract. That, however, is only one phase of the case.

The majority opinion entirely disregards the fact that a written contract may be subsequently modified by parol. 12 Am. Jur., Contracts, § 428, p. 1006.

As early as Erskine v. Johnson, 23 Neb. 261, 36 N. W. 510, this court, in an opinion by Judge Maxwell, held: "A provision in a building contract, that 'no new work of any description done on the premises, nor any work of any kind whatsoever, shall be considered as extra

unless expressly contracted for in writing before its commencement,' will not preclude the parties from afterwards waiving the same, and making changes in the original contract by parol."

The phase of the case ignored by the majority opinion is whether the bank was subsequently orally authorized to transfer the funds from the account of the plaintiff to pay the two checks involved.

Plaintiff in his petition alleged that the defendant, without any authorization whatever, charged the checks to his account. The answer of defendant contained a general denial, which put the question of authorization in issue.

The plaintiff opened the account in the defendant bank on August 18, 1960, by depositing The Paddock, Inc., check in the amount of $4,500. The two checks written by Sherlock, in the amounts of $2,184.59 and $2,054.23 were received by the bank in the morning mail on August 18, 1960, and were in the bank at the time the account was opened. The custom and practice of the bank was to post all items on the day following their receipt. Consequently, it was not until August 19, 1960, that the bank determined that the Sherlock account was insufficient to pay the two checks which had been received in the mail on August 18, 1960.

On August 19, 1960, the bank teller in charge of returned checks brought the two Sherlock checks to James G. Melvin, another teller of the bank, and the officer who had talked with the plaintiff and had acted for the bank at the time the plaintiff had opened the account.

Melvin then attempted to call the plaintiff by telephone but was unable to reach him. Later that day, at about closing time, the plaintiff called Melvin and, according to Melvin, authorized the transfer of funds from the plaintiff's account to pay the two Sherlock checks.

The fact that the two Sherlock checks were in the bank at the time the plaintiff opened the account is not im-

portant. Any agreement between the plaintiff and the bank was subject to subsequent oral modification.

The evidence on the specific authorization embraced in the second phase of the case is Melvin's testimony about the telephone call from the plaintiff to the bank. He testified that the plaintiff had left his telephone number with him with instructions that as soon as the checks from Sherlock came into the bank, that he was to notify the plaintiff. Melvin then testified in substance that on August 19, 1960, he telephoned the plaintiff and could not contact him. He left his telephone number, however, and the plaintiff called back and gave him oral authorization to transfer money from the account that had been opened on August 18, 1960, to cover the checks of Sherlock. Melvin's testimony in this respect is as follows: "Q The number you had left for him to call, was that the regular bank business number? A Yes. Q Did you then talk to Mr. Glass at 3:00 p.m. as stated? A Yes. Q What did he say and what did you say? * * * A He said, 'Hello Jim, this is Oris Glass'. I said, 'Yes'. He said, 'This is Oris Glass. You called me?' And I said, 'Yes'. And I proceeded to tell him about the two checks and asked him to come in at the time he could come in to transfer some money. He said he couldn't get away right at that time and it being 3:00 o'clock, our hour for closing of business I had to either have him do that or send the checks back or transfer the money, which I told him I had to do one of the three, and he asked me could I do the transferring of the money and I said yes I could. Q Did you then transfer the money? A Yes, I did. * * * Q Was that transfer accomplished by debit memo to the account of Glass Land Company in which the $4500 was placed? A Yes."

Melvin transferred from Glass' account to Sherlock's account an amount sufficient to cover the two insufficient fund checks of Sherlock. Glass denies absolutely all of the testimony with reference to both the original

claimed oral conversation setting up the trust or special deposit account and the subsequent oral authorization to Melvin to transfer the funds to cover the checks.

It is my position that the trial court's judgment may be sustained on the basis of the testimony of Melvin that he held a telephone conversation with Glass on the afternoon of August 19, 1960, the day after the final deposit, by which conversation he received direct oral authorization to transfer these funds. Under the terms of a contract of general deposit with the bank, is the bank bound to pay only upon the authorized written signature, or may it rely upon subsequent oral authorization? So far as I have been able to determine, there is no law applying a different rule to bank contracts than to any other type of contract. The rule is that a bank may require, under the terms of a general deposit, the authority of a written signature on a check, but may honor or may disburse or transfer funds upon an oral authorization of the depositor.

The rule is stated in 5A, Michie, Banks and Banking, § 43a, p. 105: "The relation between a bank and a depositor being that of debtor and creditor, the bank can justify a payment out of the depositor's account only upon the actual direction of the depositor, which may be oral as well as written. It is sufficient if the bank practically carries out the instructions of a depositor as to paying his deposit to the third person; but it is liable for payment of a deposit upon the direction of a person who was unauthorized to give it." The rule seems to be that a check is only a written order, and a verbal direction from a customer to a bank to pay a sum, or transfer a credit, is sufficient authority for the bank in so doing. Whitsett v. Peoples Nat. Bank, 138 Mo. App. 81, 119 S. W. 999; Lind v. Porter, 46 Idaho 50, 266 P. 419, citing 2 Michie on Banks and Banking, p. 927; Ellis v. First Nat. Bank, 22 R. I. 565, 48 A. 986; Petty v Gacking, 97 Ark. 217, 133 S. W. 832, 33 L. R. A. N. S. 175.

In the case of Blose Estate, 374 Pa. 100, 97 A. 2d 358,

a bank officer received authorization from a general depositor shortly before his death for the transfer of funds belonging to the depositor. In that case, the court rested its decision entirely upon the fact finding that the bank officer had received oral authorization from the depositor saying, "* * * a bank may waive its rights to require written orders and may act upon a merely oral order: Ogdon v. Washington Nat. Bank, 82 Ind. App. 187, 145 N. E. 514; See also Watts v. Christie, 11 Beav. 546, 552, 50 E. R. 928; Gaunt v. Alabama Bound Oil & Gas Co. (C.C.A. 8), 281 Fed. 653, 655; 7 Am. Jur. § 504; and 9 C. J. S. § 288, p. 599. If the creditor later seeks to recover from the bank for obeying his oral order, he is estopped: Pierson v. Union Bank & Trust Co., 181 Ky. 749, 205 S. W. 906; see also 2 A. L. R. p. 175."

In Annotation, 2 A. L. R. 176, the rule is stated as follows: "But a bank may, if it so desires, waive its right to a written order, and is authorized to pay out a fund on deposit or transfer the deposit to the name of another on the oral order of the depositor. Rice v. Bank of Camas Prairie (1896) 5 Idaho, 39, 47 Pac. 856; Neff v. Greene County Nat. Bank (1886) 89 Mo. 581, 1 S. W. 747; Whitsett v. People's Nat. Bank (1909) 138 Mo. App. 81, 119 S. W. 999; Ellis v. First Nat. Bank (1901) 22 R. I. 565, 48 Atl. 936. See also First Nat. Bank v. Hall (1898) 119 Ala. 64, 24 So. 526."

A further statement of the rule is in 7 Am. Jur., Banks, § 504, p. 359: "A bank may, however, if it so desires, waive its right to a written order and pay out a fund on deposit or transfer the deposit to the name of another on the oral order of the depositor."

It is clear, therefore, that under the principles applicable to the authority of a bank arising out of a contract of general deposit with a depositor it may justify a transfer of funds or a payment on the basis of an oral authorization from the depositor. This presented a factual question for determination by the trial court. The testimony in this case revolved around a dispute as to

whether Melvin, the bank officer involved, actually received such oral authorization. There was competent testimony to sustain the finding that such authorization was received by the bank. The credibility and reasonableness of this testimony is strenuously attacked in the plaintiff's brief. This being a law action, we may not review a factual determination based upon competent and material evidence, except to determine whether there was sufficient evidence by which a reasonable conclusion could be drawn that such oral authorization was received. Our position should be that the trial court's finding in this respect has the same posture as a jury verdict upon conflicting evidence. Where the sufficiency of conflicting evidence to support a judgment depends upon the credibility of witnesses who appeared and testified before the trial court, its judgment in that respect will not ordinarily be disturbed. Northwestern State Bank v. Hanks, 118 Neb. 442, 225 N. W. 119; Furse v. Lambert, 85 Neb. 739, 124 N. W. 146.

It therefore appears, applying the principles of law applicable thereto, that the plaintiff entered into a general deposit contract with the bank. Under the law applicable thereto, the bank was entitled to withdraw or transfer the funds to cover these two checks on the oral authorization of the plaintiff Glass. The trial court's judgment in this respect should have been affirmed.

CARTER, J., concurring.

It appears necessary to point out in the instant case that the issues contained in the pleadings do not include any contention that there was a modification of the deposit agreement made in writing at the time the deposit was made. The sole issue as shown by the pleadings and the briefs was whether or not the deposit was one for a special purpose which authorized the bank to charge the amounts of the two Sherlock checks to plaintiff's account. The holding of the majority that the deposit was a general deposit, with which the minority takes no exception, disposes of the issues correctly.

That there can be a modification of a written contract before breach by parol without a new consideration is not questioned. I submit, however, that the situation in the present case is nothing more than an attempt to vary the terms of a written contract by parol. There is no evidence of any attempt to modify the deposit agreement and the bank does not so plead or otherwise contend. If a bank may avoid a wrongful withdrawal of funds on general deposit by asserting an uncorroborated authorization by telephone, which is flatly denied by the depositor, the very purpose of written contracts is subverted and the deposit of money in a bank as a place of safekeeping becomes a myth.

The evidence shows that the two checks were in the bank for payment when plaintiff made his deposit. The account on which they were drawn did not contain sufficient funds for their payment. If they were to be unconditionally paid from plaintiff's account, it would seem that authorization could have been obtained at that time. But instead, a written contract for a general deposit was entered into. All negotiations were merged in the deposit contract. The evidence of the bank's employee that he obtained oral authorization by telephone, which was unequivocally denied by plaintiff, to pay the checks from plaintiff's deposit account is indicative of no intention to modify the deposit agreement. That no such intention existed is supported by the fact that neither the pleadings nor the briefs allege any such facts. The rule has always been that a judgment must be supported by allegations in the pleadings and proof by evidence. Hallgren v. Williams, 146 Neb. 525, 20 N. W. 2d 499; National Fire Ins. Co. v. Evertson, 153 Neb. 854, 46 N. W. 2d 489; Miller v. City of Scottsbluff, 155 Neb. 185, 50 N. W. 2d 824.

The position taken in the dissenting opinion is not supported by pleadings or proof. The statement in the dissenting opinion that the majority opinion disregards the fact that a written contract may be subsequently

modified by parol evidence is therefor without substance. No such issue is raised by the pleadings and consequently it is not before the court for its determination.