STATE EX REL. CLARENCE A. H. MEYER, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, APPELLANT, V. AMERICAN COMMUNITY STORES CORPORATION, A CORPORATION, APPELLEE.
228 N. W. 2d 299

Filed May 1, 1975. No. 39747.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellant.

Delehant, Croker & Huck, for appellee.

Thomas C. Brickle and Richard W. Peterson, for amicus curiae.

Heard before McCOWN, and NEWTON, JJ., COLWELL and CLARK, District Judges, and KUNS, Retired District Judge.

McCOWN, J.

This is a quo warranto action brought by the State of

Nebraska through its Attorney General against American Community Stores Corporation. The action seeks forfeiture of the corporate charter, rights, and privileges of the respondent on the ground that the respondent had engaged in the banking or savings and loan business without authorization, in violation of the laws of the state. The District Court for Lancaster County found that the respondent was not engaged in the banking or savings and loan business and dismissed the information. The State has appealed.

The respondent, American Community Stores Corporation, is a Texas corporation licensed to do business in Nebraska. It operates 35 supermarket stores in the state under the name of "Hinky Dinky." The annual food sales volume is in excess of $100 million. To increase food sales, respondent has traditionally offered incidental services to its customers, including the cashing of checks, selling of stamps, selling of money orders, free use of telephones, and the availability of postal boxes.

First Federal Savings and Loan Association of Lincoln is a federally chartered savings and loan association subject to the jurisdiction of the Federal Home Loan Bank Board. On January 9, 1974, the Federal Home Loan Bank Board authorized First Federal to install computer terminals in two of the Hinky Dinky stores in Lincoln. On January 14, 1974, the computer terminals owned by First Federal were installed in the two stores. First Federal paid no consideration to respondent, nor does respondent pay First Federal any fees or compensation. Neither is any charge made to the customer for the service, which is called TMS (transmatic money service). The Federal Home Loan Bank Board refers to the system as a "place-of-business funds transfer system."

The TMS service is a means by which a TMS depositor of First Federal of Lincoln can communicate with First Federal in order to make deposits and withdrawals by

means of a computer terminal installed at a location such as one of the respondent's stores. A customer in the Hinky Dinky store cannot open a First Federal account, nor deposit or withdraw from a passbook or certificate account with First Federal, nor make a loan payment. The computer terminal itself is about the size of an adding machine and is connected by a regular telephone to the computer at the home office of First Federal in Lincoln. The terminal is located at the courtesy counter in respondent's store. The respondent maintains an interest-bearing transmatic savings account with First Federal, initially $25,000, which is replenished from time to time as needed. Each depositor of First Federal who uses the system must have a transmatic savings account at First Federal and both the store and the customer have a transmatic card which must be used with each transaction. Transactions are handled exclusively by respondent's employees.

If a customer wishes to deposit in his or her First Federal account, the customer goes to the courtesy counter of the store and obtains a transaction slip from a store employee. When that slip is filled out, the respondent's employee then places the two electronically embossed and coded TMS cards in the terminal. One card identifies the store and the other identifies the customer. The customer also has to furnish certain personal confidential numbers, which are not contained on the card, for the purpose of verifying that the person using the card is authorized to use it. The store employee then uses the telephone on the terminal to activate the on-line computer, which is located at the main office of First Federal. The computer then verifies the account and the information. Once verification has been made, the transaction proceeds instantaneously. The computer debits the store's account at First Federal in the amount of the customer's deposit; credits the customer's account at First Federal in the same amount; and notifies the terminal operator that the transaction has been com-

pleted. The store then accepts from the customer the money or check representing the deposit and the money is placed in the cash register with other money of the store.

In the case of a withdrawal the procedure is essentially the same except that in this case the computer debits the customer's First Federal account and credits the store's First Federal account, and the store then pays the amount of the withdrawal in cash to the customer from the store's cash drawer.

The TMS operation at respondent's two stores in Lincoln began experimentally on January 14, 1974, and continued until March 1, 1974. It was then temporarily suspended and later begun again. During the experimental period from January 14 to March 1, 1974, 3,169 individual transactions were initiated from the two stores, involving a total deposit volume of $333,085.80, and a total withdrawal volume of $40,605.70, an average of $117.92 per transaction.

The evidence also establishes that state chartered savings and loan associations maintain agents in cities or areas where they have no home office or branch. These agents accept deposits and transmit them to the home office and make on-the-spot withdrawals or transmit withdrawal requests to the home office. They also solicit business and handle other activities for the home office. The Assistant Director of Banking of the State of Nebraska, who is the supervisor of state chartered savings and loan associations for the department, testified that there is nothing in the statutes to cover this activity by agents of savings and loan associations, and that so far as he knows, there is nothing that would prohibit anyone from acting as agent for a savings and loan association in such transactions. He conceded that the respondent could act as an agent for a state chartered savings and loan association in Nebraska under current state statutes.

The State contends that performance of the activities

above described by the respondent through the means of a computer terminal located in its store constitutes engaging in a banking or savings and loan business. The evidence, however, is conclusive that the operations challenged here have been specifically authorized by the Federal Home Loan Bank Board, which has jurisdiction over the operations of First Federal Savings and Loan Association; and also that the actions of respondent were not in violation of any statute of this state governing the carrying on of a savings and loan business. The State's position therefore rests on the assertion that the actions of the respondent here constitute engaging in a banking business.

The State contends that respondent's actions violate section 8-114, R. R. S. 1943, and, in particular, the language of that section which provides: "It shall be unlawful for any corporation to receive money upon deposit or conduct a bank under the laws of this state, until such corporation shall have complied with all the provisions and requirements of sections 8-101 to 8-1,122." The State argues that the respondent is itself receiving deposits and paying withdrawals, and that this amounts to carrying on the business of banking as well as being in violation of statutory provisions limiting branch banking.

This court has continuously held that the relationship of banker and depositor can only be created by contract, express or implied. In City of Lincoln v. First Nat. Bank, 146 Neb. 221, 19 N. W. 2d 156, this court said: " 'The term "deposit," when used in connection with a banking transaction, denotes a contractual relationship ensuing from the delivery, by one known as the "depositor," of moneys, funds, or things into the possession of the bank, which receives the same upon the agreement to pay, repay, or return, upon the order or demand of the depositor, the moneys, funds, or equivalent amount, or things received; * * *.' "

The general rule is that a bank which receives a gen-

eral deposit of money becomes the debtor of the depositor. Glass v. Nebraska State Bank, 175 Neb. 673, 122 N. W. 2d 882. The undisputed evidence here establishes that the element of a debtor and creditor relationship essential to any bank deposit or withdrawal of funds never exists between the store and the customer. The customer is transacting business with First Federal through the use of a computer terminal in the store, and the actions of the store facilitate that transaction. The State wishes to disregard not only the facts of electronic technology but the undisputed evidence in this case. The computer terminal is analogous to communication equipment of other kinds in that it simply transmits information to the central computer of First Federal. The deposit and withdrawal transactions are electronically effected and perfected by the computer on the records and premises of First Federal. At no time does First Federal have possession or ownership of any cash or funds physically transferred on the store premises between the store and the customer. It seems clear to us that under the operations outlined here, the First Federal depositor is giving funds to or receiving funds from the respondent's store, and the store is simply a financial as well as an operational intermediary between the depositor and First Federal.

We are advised that this case is one of first impression in the courts. Various federal agencies having jurisdiction over financial institutions have determined that computer terminals located in stores or other places of business, and manned by an employee of the store, may be established under specified conditions by a financial institution under their jurisdiction. Such operations do not constitute an illegal banking or savings and loan operation by the store, nor the carrying on of business at an unauthorized branch by the financial institution involved. See, Federal Home Loan Bank Board Document 74-573, 39 Fed. Reg. 23991, and Resolution 74-575, June 26, 1974; Comptroller of the Currency, Department

of the Treasury, 39 Fed. Reg. 44416, December 24, 1974; National Credit Union Administration, 39 Fed. Reg. 30107, August 21, 1974. See, also, Opinion No. 74-196 Attorney General of Kansas, June 12, 1974. We have found no ruling by any regulatory agency to the contrary.

The State has the burden of proving that the actions of the respondent constitute the carrying on of a banking or savings and loan business. The evidence is uncontradicted, however, that the respondent does not accept or retain deposits, nor promise to repay them or return them to anyone. The respondent's activities are restricted to acting as an intermediary and assisting in the transfer of funds between First Federal and First Federal's depositors. The State has failed to cite authority in direct support of its legal position, and has failed to sustain the burden of proof on the facts.

Where a federal savings and loan association installs a computer terminal in a retail store as authorized by the Federal Home Loan Bank Board for the purpose of facilitating the electronic transfer of funds between the association and its depositors, the owner or operator of the store, by manning the computer terminal and assisting in such electronic transfer of funds under the facts here, is not engaging in either a banking or savings and loan business.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.